### FISHER *v.* MONROE *et al.*

*(Common Pleas of New York City and County, General Term.* January 5, 1891.)

**1. CONTRACT OF EMPLOYMENT—DISMISSAL.**

Plaintiff, an actress, was employed by defendants to "render services at such theaters, opera-houses, and halls as required," for a certain period. For refusal to attend at a rehearsal as directed, they dismissed her, and refused to accept further services. In an action for damages for wrongful dismissal, she sought to excuse her failure to attend the rehearsal on the ground that, when directed to do so, she was "physically exhausted;" but it did not appear that this exhaustion continued to the time of the rehearsal. *Held,* that a mere temporary disability would not necessarily terminate the contract, but plaintiff having failed to show a sufficient excuse for non-attendance at the rehearsal, a verdict in her favor could not be sustained.

**2. TRIAL—FAILURE TO INSTRUCT.**

An omission to charge on a material point is not error where no request for such an instruction is made.

Reversing 11 N. Y. Supp. 207.

Appeal from city court, general term.

Action by Jennie Fisher against Robert B. Monroe, George Monroe, and John Rice, for damages for breach of contract of employment by wrongful dismissal of plaintiff. For opinion of general term of city court, see 11 N. Y. Supp. 207.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Waldorf H. Phillips,* (*Hoover & Sulzer,* of counsel,) for appellants. *Seaman Miller,* for respondent.

BISCHOFF, J. On or about September 1, 1888, plaintiff, an actress, and defendants, theatrical managers, entered into an agreement, pursuant to which the plaintiff was to "render services at such theaters, opera-houses, and halls as required" by the defendants, for a period of 30 weeks, or longer, at the option of the defendants, for which services the defendants agreed to pay the plaintiff $30 per week. The agreement also provided, among other things, that either party thereto might, upon two weeks' previous notice to the other, terminate the employment. Under this agreement plaintiff entered upon the performance of her services, and continued doing so until about the 17th day of November, 1888, (being a period of 10 weeks,) and on which last-mentioned day the defendants refused to continue the employment, upon the ground that the plaintiff had violated the contract on her part by her refusal to attend a rehearsal at which her presence had been requested. The plaintiff thereupon brought this action against the defendants to recover damages for her alleged wrongful dismissal from their employ, the damages claimed being the salary for the time subsequent to her dismissal, to-wit, $30 dollars, per week for 20 weeks, less the sum of $35, earned by her from other sources, and alleged in her complaint that, during the entire term of her employment, she was ready and willing to perform all the conditions of the agreement on her part. The defendants denied that the plaintiff was ready and willing so to perform, and asserted that the plaintiff refused to perform the same, and that for good and sufficient cause the plaintiff was discharged from their employ, and had been fully paid for all services performed by her up to the time of such discharge. The action was tried, and resulted in a verdict for the plaintiff for $565, and interest, judgment upon which was duly entered, from which an appeal was taken to the general term of the court below, where the verdict was sustained; and from which latter determination the defendants have now appealed to this court. Upon the trial in the court below it appeared that the term of plaintiff's employment commenced September 3, 1888, and that such employment continued until November 17 of the same year, on which day she was discharged by the defendants, and informed that her future services would not be accepted by them, the ground for her discharge being

her alleged refusal to attend at a rehearsal occurring on the day of her dismissal, and at which she had been directed to attend the day before. The only witness examined for the plaintiff was herself, and she admitted that she was requested to attend such rehearsal, and that she failed to attend the same. She, however, sought to excuse her failure to attend the rehearsal upon the ground that, when she was directed by the defendants to appear thereat, (which she admits was on the day preceding the rehearsal,) she was "physically exhausted;" and that, in consequence thereof, she could not attend. But it nowhere appears from the evidence submitted to us upon this appeal that the physical exhaustion of the plaintiff continued beyond the time fixed for the rehearsal, or that, at the time of the rehearsal, she was in fact physically unable to attend. Construing the term "physical exhaustion" most strongly in favor of the plaintiff, and admitting that, at the time of her refusal to attend the rehearsal, she was reduced to a state of physical debility, which temporarily incapacitated her for further services, the most which can be said of her excuse for such refusal is that she anticipated a continuance of such debility for a period which would prevent her presence at the rehearsal. That it did so continue, and that she was so debilitated at the time the rehearsal took place, did not appear upon the trial, so far as we are able to ascertain from the record of this appeal, and no excuse for her refusal to attend the rehearsal was therefore shown. It will be borne in mind that this action is brought to recover for the loss of salary accruing to the plaintiff subsequent to her alleged wrongful dismissal, and that compensation for services prior to such time is not a part of the damages claimed. Assuming that plaintiff, at the time for which the rehearsal was called, was in such a state of physical debility as rendered her attendance impossible, and that upon her recovery she at once sought out the defendants, and offered to continue her services for the remainder of the term of employment, the question still remains, were the defendants obligated to accept such offer? This question underlies the plaintiff's entire cause of action, and hence it follows that, if the same must be determined adversely to her, she is not entitled to any part of the damages awarded her in the court below. I am unable to find that this precise question has ever been adjudicated in this state, and counsel for the parties to this appeal do not in their briefs refer to any such adjudication.

It has repeatedly been held that if a person, under contract to render personal services of a peculiar kind, requiring the personal skill of the person who is to render the same, is prevented by reason of sickness from the performance thereof, his failure to perform will excuse him from such performance to such an extent that he will be enabled to recover upon a *quantum meruit* for the services actually rendered up to the time of his failure to continue the same by reason of such sickness. *Wolfe* v. *Howes,* 20 N. Y. 197; *Spalding* v. *Rosa,* 71 N. Y. 40; *Robinson* v. *Davison,* L. R. 6 Exch. 269, 40 Law J. Exch. 172; *Fuller* v. *Brown,* 11 Metc. (Mass.) 440. So it has been held that an employe who is prevented by sickness from fulfilling his agreement to render services cannot be held answerable in damages for such failure to the employer. *Dickey* v. *Linscott,* 20 Me. 453. The principle underlying these cases is that the contract was entered into by the contracting parties upon the implied condition of the continued ability of the party who is to render the services to perform, and that, when unable to perform because of sickness or physicial or mental incapacity proceeding from no willful or deliberate conduct of the party, such inability is in consequence of an act of God, and excuses performance. But what is the effect of the failure of the party of whom the services are required to perform, under the circumstances above described, upon the contract? To render the contract operative and binding upon the parties at its inception, the obligations of the contracting parties must be mutually dependent; that is to say, the obligation of the party who is to receive the services to pay is conditioned upon the obligation of the

party who is to render the services to perform, and *vice versa*. If the contract of employment is to continue operative and binding, those interdependent obligations must continue to exist; and, if one party is excused from the performance of his obligations, the obligations of the other party must likewise come to an end. In *Spalding* v. *Rosa*, cited above, ALLEN, J., says: "Contracts for personal services are subject to this implied condition: that the person shall be able at the time appointed to perform them; and if he dies, or, without fault on the part of the covenantor, becomes disabled, the obligation to perform is extinguished." In *Fenton* v. *Clark*, 11 Vt. 557, BENNETT, J., says: "In the case before the court, the plaintiff contracted with the defendant to labor personally for him for four months, at ten dollars per month, and, by the terms of the contract, was to receive no pay till he had worked the four months. These services being of a personal character, the contract could not be performed by another, and as the plaintiff was disabled to perform it himself, by reason of sickness, which was the act of God upon the authority of the foregoing cases, the contract was discharged." In *Dickey* v. *Linscott*, cited above, in dismissing the employer's claim for damages, Chief Justice WESTON uses the following language: "In a contract for the performance of mutual manual labor requiring health and strength, we think it must be understood to be subject to the implied condition that health and strength remain. * * * The contract failing without the fault of the defendant, it would be neither just nor equitable to hold him obliged to labor for the plaintiff, when the days were longest, and labor in husbandry most valuable. The plaintiff was not obliged to accept such partial performances. He had a right to secure the services of another man, and might have had as many laborers as it was for his interest to employ." It is apparent from the foregoing cases that the theory upon which the person who contracted to render services was permitted to recover upon a *quantum meruit*, for services actually performed at the time he became unable by reason of sickness to continue, was that, the condition of his continued ability to perform having failed, the contract itself had come to an end. He was excused from further performance, and, that being the case, the other contracting party was likewise excused from further performance of the contract on his part. To hold otherwise, and to regard the employer as under a continued obligation to perform his part, and to receive the services of the employe when the latter has recovered from his sickness or disability, would thrust into every contract of employment requiring the personal services of skilled artists, artisans, and mechanics, in the varied enterprises and occupations of mankind, an element of uncertainty which would lead to serious confusion, and to uncertainty of their duration. If, under such circumstances, the employer is compelled to speculate upon the chances of the early recovery of the employe, it can be readily seen that, if the enterprise is to be continued, he can only contract for like services at the peril of being required to pay both the former employe and those whose services have become necessary, because of the inability of the former employe to continue. To hold that, by the sickness of the employe, both contracting parties are discharged from further performance of the contract of employment, imposes no greater hardship upon such employe than is suffered by any person who is prevented from continuing his earnings by means of the employment of his services, since he is not required to forfeit compensation for the services actually performed.

A distinction should, however, be made between permanent and temporary disability arising from causes beyond the control of the employe. In the case of a mere temporary disability, the effect thereof would not in every case be to work a dissolution of the contract of employment. 1 Whart. Cont. § 323. In such cases I apprehend the rule to be that, if the temporary disability did not in any substantial manner prevent performance on the part of the employe, the employment must be regarded as continuing. It would therefore appear to be necessary in every such case to inquire whether or not the pres-

ence of the employe in the employer's service during the continuance of the disability was material and essential to the prosperity of the enterprise in which the services were required, and, if such presence was not so material and essential, the employer is not relieved from his obligation to accept the services of the employe when the latter, upon his recovery, offers to continue. In the case at bar, the plaintiff was an actress. The service which she was required to render was in performances at the defendants' theaters and opera-houses, and to that end her services at rehearsals were undoubtedly at times not only necessary, but indispensable; but it also appears that the plaintiff had been excused from attendance at some former rehearsals, and that the re-hearsal at which she failed to appear might have proceeded without her, by the employment of some person to read her part, and from these facts it might be concluded that the failure of the plaintiff to appear at this particular re-hearsal, for the non-attendance at which she was dismissed, did not in any material or substantial manner hinder the defendants from continuing their enterprise, or giving the contemplated theatrical performances. It was prop-er for the trial court to submit to the jury the question whether or not the plaintiff, by reason of her temporary disability, failed to perform the contract of employment on her part in any substantial manner; but inasmuch as de-fendants' counsel failed to make a specific request that the court so charge, his omission to submit that question to the jury cannot, for the purpose of this appeal, be assigned as error. *Winchell* v. *Hicks*, 18 N. Y. 559; *Muller* v. *McKesson*, 73 N. Y. 195. For the reason, however, as above stated, that the evidence fails to show a sufficient excuse for the plaintiff's non-attendance at the rehearsal, at which she was directed to attend, I am of the opinion that the verdict is against the law and the evidence; that the motion for a new trial upon the minutes should have been granted. The judgment should be re-versed, and a new trial ordered, with costs to abide the event. All concur.