(66 Misc. Rep. 282.)

### CONRIED METROPOLITAN OPERA CO. v. BRIN.

(Supreme Court, Trial Term, New York County. February, 1910.)

1. DAMAGES (§ 78*)—BREACH OF CONTRACT—LIQUIDATED DAMAGES.

A contract for the services of a musical artist provided that, if the artist breached such contract, he should pay $20,000 as partial compensation, "it being impossible to ascertain or estimate the entire or exact loss," by reason of such breach, which sum is agreed upon as a partial compensation. *Held* to fix the measure of the recovery of the employer for breach of the contract.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 157–163; Dec. Dig. § 78.*]

2. CONTRACTS (§ 173*)—CONSTRUCTION—DAMAGES.

A contract for the services of a musical artist provided that, on breach of the same by him, he should pay $20,000 for partial compensation for injury. The contract also provided for a deduction of $400 for each failure of the artist to sing as required. *Held*, that the latter provision contemplated the continuance of the employment and a mere delinquency on the part of the artist, and did not impair the provision for $20,000 damages on a breach of the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 762–764; Dec. Dig. § 173.*]

Action by the Conried Metropolitan Opera Company against Charles L. Brin, known as Charles Dalmores. Judgment for plaintiff.

A. J. Dittenhoefer, for plaintiff.
Delphin M. Delmas, for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

BISCHOFF, J.   Interpretation abominates equivocation. Its office is to elucidate the intention of the contracting parties; and, when their language is free from incertitude, it is the court's duty to give it effect in harmony with its apparent sense and meaning.   Portia's fame as a jurist seems spurious when it is noted that, conceding as she did the validity of her client's contract, her measure of Antonio's obligation as surety for Bassanio proceeded from the merest quibble.   It was evasion, not interpretation.

In the contract under review, the plaintiff is referred to as the "company" and the defendant as the "artist."   By the first paragraph thereof the defendant engaged generally to enter the plaintiff's employment as first tenor at its operatic and concert performances.   The third and nineteenth paragraphs provide that the employment shall commence with the season of 1908–09, and endure for that and the two next succeeding seasons, the defendant to receive for his services $20,000 for each season.   The thirteenth paragraph, so far as it is material to the question under discussion, provides that:

"Should the artist continue sick for a period exceeding twenty-one days, the company shall have the right to terminate this agreement and shall not be required to pay any salary or compensation to the artist during the period of said sickness.   Whenever the artist shall report that he is sick, he shall submit to an examination by a physician designated by the company, and shall immediately upon recovery report to the company."

And the sixteenth paragraph is as follows:

"This agreement need not be acknowledged before a notary public or viséed by a consul, and on the breach by the artist of the first and thirteenth paragraphs, or either of them, he shall pay to the company the sum of twenty thousand ($20,000) dollars as partial compensation for injury to the company by reason of said breach, it being impossible to ascertain or estimate the entire or exact loss, damage or injury which the company may sustain by reason of said breach, and said sum is agreed upon as partial compensation, and not as a penalty.   This provision shall be enforceable in all countries."

That the defendant never entered upon his employment, and that he repudiated the entire contract before the commencement of his term of service, are conceded facts.   Hence the conclusion that the plaintiff is entitled to recover is inevitable (Howard v. Daly, 61 N. Y. 362, 376, 19 Am. Rep. 285), and the present inquiry has to do only with the measure of the recovery.   That measure has been fixed by the agreement of the parties, and, upon principle and under the adjudications sustaining it and hereinafter alluded to, is conclusive.   The eighth paragraph of the contract provides for a deduction of $400 from the defendant's salary for each failure to appear or sing as required.   This plainly contemplates the continuance of the employment and a mere delinquency on the defendant's part, of which the plaintiff did not avail itself as a breach of the contract.   So far, therefore, the defendant's failure to sing at one or more performances does not come within the operation of the contractual provisions respecting damages hereinbefore alluded to.   There is no conflict between these several provisions.   They may well stand side by side, neither impairing the effect of the other.   The provisions respecting damages apply only in the case of a breach of the contract, and the defendant's delinquency could not constitute a breach unless the plaintiff elected so

to treat it. Quite obviously paragraph eighth was intended to cover the case only where the defendant had defaulted in his performance and the plaintiff chose to treat the employment as continuing. The question also is immaterial, as I view it; but, as the learned counsel for the defendant points to his client's breach of his obligation to submit to an examination by a physician to be selected by the plaintiff in the event of the defendant's reported illness as involving no more than an unsubstantial injury to the former, it may not be out of place to say that, since contracts of the kind under review are dissolved by the incapacity of the party required to perform the services (Fisher v. Monroe, 16 Daly, 461, 12 N. Y. Supp. 273), and the enterprise of the other contracting party may be wholly dependent upon the continuity of the services, the provision for an examination by a physician to be selected by the latter party may be of exceeding importance as a means of safeguarding against a capricious termination of the employment. Should the party required to perform the services resort to a pretense of illness as a means of escaping further performance, the other contracting party, without the examination by a physician of his own selection, may be seriously hindered in his proof should he seek redress for the breach of the contract. Again, the examination may be of the utmost importance to the other contracting party, since the nature and extent of the illness of the party whose services are required may control his election to continue or to abandon his enterprise.

However generally the courts may at one time have been inclined to view a presumably gross disparity between the lesser actual damages resulting from the breach of a contract and the damages stipulated to be paid in the event of a breach as controlling of the intention of the parties to provide a penalty rather than compensation, it is to be noted that the later adjudications of the Supreme Court of the United States as well as the Court of Appeals of this state have discarded that rule as unsound in principle. It has been definitely settled that resort to any such disparity as a guide to the intention of the contracting parties is properly to be had only where the language of the contract presents a case of ambiguous meaning. "Words," says Lamar, J., in Lake County v. Rollins, 130 U. S. 671, 9 Sup. Ct. 653 (32 L. Ed. 1060), "are the common signs that mankind make use of to declare their intention to one another; and where the words of a man express his meaning plainly, distinctly, and perfectly, we have no occasion to have recourse to any other means of interpretation." So in Calderon v. Atlas S. S. Co., 170 U. S. 280, 18 Sup. Ct. 591 (42 L. Ed. 1033), per Brown, J.:

"It is true that in cases of ambiguity in contracts as well as in statutes courts will lean toward the presumed intention of the parties or the Legislature, and will so construe such contract or statute as to effectuate such intention; but where the language is clear and explicit there is no call for construction, and this principle does not apply."

Again, it is said by Harlan, J., in United States v. Choctaw, etc., Nations, 179 U. S. 531, 21 Sup. Ct. 163 (45 L. Ed. 291):

"If the words be clear and explicit, leaving no room to doubt what the parties intended, they must be interpreted according to their natural and ordinary significance."

Washington, J., in Green v. Biddle, 8 Wheat. 89 (5 L. Ed. 547):

"Where the words of a law, treaty, or contract have a plain and obvious meaning, all construction in hostility with such meaning is excluded. This is a maxim of law, and is a dictate of common sense; for were a different rule to be admitted no man, however cautious and intelligent, could safely estimate the extent of his engagements or rest upon his own understanding of a law until a judicial construction of those instruments had been obtained."

And Jackson, J., in Loud v. Pomona Land, etc., Co., 153 U. S. 576, 14 Sup. Ct. 932 (38 L. Ed. 822):

"If the language is clear and unambiguous it must be taken according to its plain meaning as expressive of the intention of the parties, and under settled principles of judicial decision should not be controlled by the supposed inconvenience or hardship that may follow such construction."

It is not unlawful for the parties to agree in advance upon the compensation which the party guilty of a breach of the contract shall pay to the other.

"The subject-matter of a contract may be valued or the damages in case of a breach may be liquidated in advance." Hart v. Penn. R. R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717.

And following the principles embodied in the adjudications hereinbefore quoted from, the court in Sun Printing, etc., Ass'n v. Moore, 183 U. S. 660, 22 Sup. Ct. 248 (46 L. Ed. 366), said:

"We think that the doctrine (where actual damages can be assessed from testimony, the court must disregard any stipulation fixing the amount and require proof of the damage sustained) is wrong in principle, was unknown to the common law, does not prevail in the courts of England at the present time, and is not sustained by the decisions of this court. * * * This court has consistently maintained the principle that the intention of the parties is to be arrived at by a proper construction of the agreement made between them, and whether a particular stipulation to pay a sum of money is to be treated as a penalty or as an agreed ascertainment of damages is to be determined by the contract, fairly construed; it being the duty of the court always, where the damages are uncertain and have been liquidated by an agreement, to enforce the contract. * * * As the stipulation for value referred to was binding upon the parties the trial court rightly refused to consider evidence tending to show that the admitted value was excessive, and the Circuit Court of Appeals properly gave effect to the expressed intention of the parties."

Affirming the views expressed in the case last quoted from, the same court said, in United States v. Bethlehem Steel Co., 205 U. S. 731, 27 Sup. Ct. 455 (51 L. Ed. 731):

"There has in almost innumerable instances been a question as to the meaning of language used in that of a contract which related to the payment of damages for its nonfulfillment, whether the provision therein made was one for liquidated damages, or whether it meant a penalty simply, the damages to be proved up to the amount of the penalty. * * * The courts at one time seemed to be quite strong in their views and would scarcely admit that there ever was a valid contract providing for liquidated damages. Their tendency was to construe the language as a penalty, so that nothing but the actual damages sustained by the party aggrieved could be recovered. Subsequently the courts became more tolerant of such provisions, and have now become strongly inclined to allow parties to make their own contracts and to carry out their intention, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of a contract and without proof of the damages actually sustained. * * * The question always is: What did the parties intend by the language used? When such intention is ascertained, it is ordinarily the duty of the court to carry it out."

In Bagley v. Peddie; 16 N. Y. 469, 69 Am. Dec. 713, it was said by our Court of Appeals:

"If, independently of stipulated damages, the damages would be wholly uncertain and incapable of being ascertained except by conjecture, in such case the damages will be considered liquidated, if they are so denominated in the instrument. If the language of the parties evinces a clear and undoubted intention to fix the sum mentioned as liquidated damages in case of a default of some act agreed upon to be done, then the court will enforce the contract if legal in other respects."

And in Clement v. Cash, 21 N. Y. 253:

"When the parties to a contract in which the damages to be ascertained growing out of a breach are uncertain in amount mutually agree that a certain sum shall be the damages in case of a failure to perform, and the language is plainly expressive of such agreement, I know of no sound principle or rule applicable to the construction of contracts that will enable a court of law to say that they intended something else. Where the sum fixed is greatly disproportionate to the presumed actual damages, probably a court of equity may relieve; but a court of law has no right to erroneously construe the intention of the parties, when clearly expressed, in the endeavor to make better contracts for them than they have made for themselves. In these, as in all other cases, the courts are bound to ascertain and carry into effect the true intention of the parties. I am not disposed to deny that a cause may arise in which it is doubtful from the language employed in the instrument whether the parties meant to agree upon the measure of compensation to the injured party in case of a breach. See Kemp v. Knickerbocker Ice Co., 69 N. Y. 45. In such cases there would be room for construction, but certainly none where the meaning of the parties was evident and unmistakable. When they declare in distinct and unequivocal terms that they have ascertained the damages to be $500, or any other sum, to be paid by either failing to perform, it seems absurd for a court to tell them that it has looked into the contract and reached the conclusion that no such thing was intended, but that the intention was to name the sum as a penalty to cover any damages that might be proved to have been sustained by a breach of the agreement."

The doctrine of the cases last quoted from was reaffirmed in Curtis v. Van Bergh, 161 N. Y. 47, 55 N. E. 398.

If language means anything, the parties, by that adopted in the sixteenth paragraph of the contract under present review, have said as clearly as can be that the amount named as stipulated damages shall be the measure of the plaintiff's compensation for the defendant's breach of all or either of his obligations. It is quite apparent from that language that the contracting parties had at the time in mind a possible interpretation that a penalty rather than compensation was intended to be provided for, and, seemingly to guard against any such result, in terms declared it to be their intention that the amount named should represent the plaintiff's actual loss, and that it should be paid to the latter by way of reimbursement. There is no uncertainty of meaning in the language used; and to torture it into a meaning which would relieve the defendant from what may appear to be, under the circumstances, an oppressive or improvident contract upon his part, would require the sacrifice or subversion of principles established and adhered to for the general good.

There should be judgment for the plaintiff in $20,000, with interest and costs. Submit proposed findings with notice of settlement.

Judgment for plaintiff.