JOSE RUBIN, Plaintiff, *v.* INTERNATIONAL FILM COMPANY, Defendant.

City Court, City of New York, January, 1924.

**Contracts — wrongful discharge — when temporary disability deemed not valid cause for dismissal — motion picture production — employee injured on way to work and discharged at close of day for reporting late — when contract deemed not to have been breached by employee — employer deemed to have waived right to terminate contract — when contract not a " Sunday " contract.**

The temporary disability of one engaged to render personal services does not of itself constitute a valid cause for his dismissal, and in any event the contract continues in force until the employer manifests his election to terminate it unless the disability is such that further performance is clearly impossible and it is evident that the employer can derive no further benefit from the contract.

A written contract by which defendant engaged the plaintiff to take the important part of Francis II in the motion picture " When Knighthood Was in Flower " for at least four weeks commencing on or about April 28, 1922, defined " week " as consisting of seven actual working days. Plaintiff rendered services on April seventeenth and eighteenth and was directed to appear at defendant's studio in Long Island City at nine-thirty A. M. on the following day. In an action for wrongful discharge and resultant damages it appeared by undisputed evidence that plaintiff left his residence in New York city at about eight o'clock on the morning of the nineteenth; that he had an accident to his eye and went to a physician, who removed a piece of steel therefrom; that he endeavored, by the help of the doctor's assistant, to reach defendant on the telephone to notify it of the accident but was unsuccessful; that after applying compresses to his eye he took a taxicab to the studio and reached there at about eleven o'clock, when he immediately applied his make-up, got into his costume, and, with these ready, worked the rest of the day. After the conclusion of the day's work he was discharged on the sole ground, as testified to by defendant's director, that he had been late in getting to work. *Held*, that there was no breach of the contract on the part of plaintiff and that as the only effect of his temporary disability was to delay performance a few hours, at some financial loss to the defendant, plaintiff's discharge was not justified.

Assuming, however, that plaintiff had broken the contract the retention of his services by defendant was a waiver of any right it might have had to terminate the contract and a verdict in favor of the plaintiff will be directed.

The contract was clearly not a " Sunday " contract, for the word " week " did not necessarily mean that the seven actual working days were to be consecutive or were to include Sundays, and it would not be presumed that the parties intended to violate section 2143 of the Penal Law, which declares void a contract for Sunday services.

ACTION for damages for wrongful discharge.

*Neuman & Neuman*, for plaintiff.

*Nathan Burkan*, for defendant.

WALSH, J. On or about March 10, 1922, defendant engaged plaintiff as a motion picture actor to take the part of Francis II in the production " When Knighthood Was in Flower." The contract was in writing and provided for an engagement of at least four weeks, commencing on or before April 28, 1922. A " week " is defined in the contract as consisting of seven actual working days. Plaintiff rendered services on April seventeenth and eighteenth and was directed to appear at defendant's studio in Long Island City at nine-thirty A. M. on the following day. The undisputed evidence shows that he left his residence in the Great Northern Hotel, New York city, at about eight o'clock in the morning of the nineteenth; that he had an accident to his eye and went to a physician, who removed a piece of steel therefrom; that he endeavored, through the doctor's assistant, to reach defendant on the telephone to notify it of the accident, but was unsuccessful; that after applying compresses to his eye he took a taxicab to the

studio, reaching there at about eleven o'clock. He immediately applied his makeup and got into his costume and, with these ready, worked the rest of the day. After the conclusion of the day's work he was discharged. The reason for the dismissal, as testified to by defendant's director, was not only the lateness of plaintiff, but also the belief of the director that plaintiff did not, after his arrival, get ready as quickly as possible. Defendant does not attempt to avail itself of the latter ground as justification for the discharge. The cost of producing " When Knighthood Was in Flower " was approximately $1,400,000. The work of producing was laid out in accordance with a fixed schedule. Plaintiff's inability to attend at the time fixed necessitated a rearranging of the schedule and caused an added expense to defendant of about $2,500. Plaintiff's part in the production was an important one. As he already had been filmed on the eighteenth, it was impossible on the nineteenth to substitute another person in his place. After his discharge plaintiff brought this action against defendant for wrongful discharge, alleging the contract, due performance until the time he was discharged and the consequent damages. Defendant answered admitting the employment of plaintiff and his discharge, but denying the other allegations of the complaint. As separate defenses it set up: (1) The failure of plaintiff to perform his contract by neglecting to appear and report for work as directed, and his discharge by reason thereof; (2) that the contract provided for services on the Sunday of each week during the term thereof and was contrary to the provisions of section 2143 of the Penal Law, and void; (3) as partial defenses, that plaintiff could have obtained similar employment elsewhere, and that plaintiff during the term was employed elsewhere. Defendant also set up a counterclaim whereby it sought to secure an affirmative judgment for $5,000 damages, alleged to have been sustained by it by reason of the neglect of plaintiff to appear and report for work as above set forth. At the trial there was no evidence introduced to support either of the partial defenses and defendant withdrew its counterclaim. The sole questions remaining for consideration, therefore, are whether the contract provides for Sunday services and is void and unenforcible under section 2143 of the Penal Law, and, secondly, whether the defendant was justified in discharging plaintiff. The contract is clearly not a " Sunday " contract. There is no provision therein requiring work on Sunday. The fact that a week is stated to mean seven working days does not mean necessarily consecutive working days nor include Sundays. Unless a definite obligation to perform on Sundays is imposed by the contract, the law will not presume an intention by the parties to violate the law. As to

RUBIN *v.* INTERNATIONAL FILM CO.

City Court of New York, January, 1924.    [Vol. 122

justification. The law is well settled that a party must fulfill his contractual obligations. The duty they create must be performed. Difficulty or improbability of accomplishment is of no avail. In certain classes of cases this principle is not applied. Among these are contracts for personal services. Death dissolves personal service contracts which can be performed only by the particular individual named. In such contract there is an implied condition that the party shall be able to perform at the time stipulated for performance. *Wolfe* v. *Howes,* 20 N. Y. 197; *Spalding* v. *Rosa,* 71 id. 40. Likewise, disability to perform, due to accident or illness, may also give rise to a dissolution of the contract. Death does; sickness may. The one absolutely prevents further performance; the other may or may not entirely prevent. Permanent disability doubtless will give the right to immediately discharge and terminate the contract. Temporary disability of itself does not constitute a valid cause for dismissal. Where, however, the disability is such that it is likely to continue for a considerable period, or to constitute so serious a detriment to the employer as to go to the root of the consideration, the contract may be dissolved. But, in any event, the contract continues in force until the employer manifests his election to terminate it unless the disability is such that further performance is clearly impossible and it is evident that the employer can derive no further benefit from the contract. See Labatt Mast. & Serv. (2d ed.) § 220 *et seq.;* Wood Mast. & Serv. (2d ed.) 233; Willist. Cont. § 1942; *Spindel* v. *Cooper,* 46 Misc. Rep. 569; *Silverman* v. *Tesler,* 162 N. Y. Supp. 737. In this case the disability was merely temporary. It did not prevent performance, but merely delayed it for a few hours. There was a detriment to the employer in the sense that the delay cost it several thousand dollars. But beyond this it in nowise incapacitated plaintiff from present or future performance or affected the production of the picture. It neither impaired plaintiff's efficiency nor lessened his ability. Outside of the delay the production of the picture could proceed as originally planned. While the loss amounted to quite a large sum, the cost of production was enormous, and, considering the amount to be expended, the cost of the delay was less than one-fiftieth of one per cent. It is evident that in any large enterprise of this character any untoward delay or interference with the progress of the same must necessarily cause substantial financial loss. In *Gaynor* v. *Jonas,* 104 App. Div. 35, the plaintiff was employed for three months as a millinery trimmer. After about one month of service she was discharged by defendant by reason of the fact that she had been prevented from working for a day and a half on account of illness, whereupon she brought

action to recover damages for her unlawful discharge. The Appellate Division affirmed the judgment awarded plaintiff in the court below, the court, by Willard Bartlett, J., saying (p. 37): "Under a contract of this sort I think that the illness which will justify a master in dismissing his servant must be something more than a mere temporary malady of short duration compared with the entire period of service contemplated by the agreement. In other words, it must be a serious sickness, lasting or likely to last so long as to interfere substantially with the interests of the employer. ' Sickness for a lengthened period — in one case two weeks — releases both parties from the contract. The master is not bound to wait unreasonably for the restoration of his servant's health, and his necessities may well be regarded as the measure of what is reasonable.' " That the unforeseen accident incidentally caused the defendant a financial loss was unfortunate, but it does not follow necessarily, nor is it here shown, that plaintiff's disability interfered so substantially with the interests of the defendant as to go to the root of the consideration, which was, of course, his readiness, willingness and ability to continue to perform and defendant's undiminished ability to derive further benefit from the contract. The case of *Fisher* v. *Monroe*, 12 N. Y. Supp. 273, 275, cited by defendant, is not an authority to the contrary. The decision in that case was that plaintiff had not shown she was disabled by sickness from reporting as directed by her employer and that she failed to show a sufficient excuse for non-attendance at rehearsal as directed. The portion of the opinion regarding the effect of temporary disability on the contract is merely dictum, but at any event is in substantial accord with the cases above cited. After the happening of the accident and upon plaintiff's reporting for work defendant did not immediately discharge him, but permitted him to work the entire day, nothing being said about dismissal until after the close of the working day. Even though it be assumed that the temporary disability of plaintiff warranted the defendant in dismissing him and dissolving the contract relation existing, the retention of plaintiff after the happening of the accident and his lateness in arriving was a waiver on its part of any right it may have had to dismiss him for this cause. Retention after knowledge is condonation, such condonation being subject to an implied condition of further good conduct. *Gray* v. *Shepard*, 147 N. Y. 177; *Jerome* v. *Queen City Cycle Co.*, 163 id. 351. While it may be that defendant may show facts establishing that such retention was not condonation the only explanation given by it is that it desired to minimize its loss. The duty to minimize loss rests upon

27

a party only where he has a cause of action against the other contracting party for a breach of the contract. Concededly no such action existed here, and hence no corresponding duty. I am of opinion there was no breach on plaintiff's part or any disability to perform warranting a dissolution of the contract and discharge by defendant, but even assuming there was, defendant's retention of plaintiff's services after knowledge was a waiver of any right it may have had. Plaintiff's disability is deemed an act of God. The law will not hold him liable for its consequences. It will, if such act substantially interferes with the carrying out of the service contract, permit the other contracting party to dissolve the contract relation. The only effect of the accident was to delay performance a few hours and to cause some financial loss to defendant. Plaintiff presented himself for work as soon as possible. Defendant used his services. Plaintiff was ready and willing to continue and defendant was not prevented from further producing its picture and using plaintiff's services. No further inability on his part is shown. Nevertheless, defendant's contention seems to be that even though the accident did not prevent it from going forward with the production it could avail itself of plaintiff's services so long as the same were to its benefit or it saw fit to do so, but could thereafter discharge him because of his original delay in appearing, and this upon the sole ground that the delay caused it to sustain some financial loss. Such contention seems to be unsound. Verdict directed for plaintiff as prayed for in the complaint.

Judgment accordingly.