# Richmond

## Citizens Home Insurance Company, Incorporated v. C. E. Glisson.

November 27, 1950.

Record No. 3700.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Cliff R. Skinner* and *Willcox, Cooke & Willcox*, for the plaintiff in error.

*William G. Maupin* and *Major M. Hillard*, for the defendant in error.

MILLER, J., delivered the opinion of the court.

The Citizens Home Insurance Company, Incorporated, hereinafter called the Company, challenges the validity of a verdict and judgment obtained by C. E. Glisson, hereinafter referred to as plaintiff, against it as damages for alleged unlawful termination and breach of a contract existing between them.

The Company is engaged in the industrial life insurance business. Premiums on all policies issued by it become due weekly and failure for four successive weeks to pay a

premium will cause lapse of the policy. On April 18, 1941, the parties entered into a written contract under the terms of which plaintiff was authorized to solicit applications for industrial life insurance in the State of Virginia and collect the weekly premiums thereon. As compensation for such services, he received a percentage of the premiums collected.

Two provisions of the contract material to the question presented and decided are set forth below:

"10. The Contractor agrees to report for lapse each week all policies in his account on which four (4) weeks' premiums are due and unpaid so that policies may be lapsed.

"12. If either party shall violate any of the terms, covenants or conditions of this agreement, the other party shall have the right to declare this agreement terminated, but the failure of either party to exercise such right shall not be construed as a waiver of that right, which shall continue throughout the existence of this agreement. * * *"

Over a period of years plaintiff had sold sufficient insurance to build up a debit from which his share of the premiums amounted to approximately $5,500 per year and the yearly proceeds received by the company were in excess of $8,000. During the fall of 1947 he suffered a severe illness and for more than a year was unable to resume his work. The Company claims that because of his inability to perform his duties it had a legal right to terminate the contract.

Though several. errors are assigned, the decisive question is whether or not the company was justified in terminating the contract, and if so, was it actually terminated and plaintiff advised of that fact before he was able to resume his duties.

Fairly appraised in the light most favorable to plaintiff, the evidence conclusively establishes that on November 3, 1946, he suffered a severe stroke of paralysis. This illness was augmented and recovery retarded by complications of serious nature which thereafter ensued. He was so definitely

and totally incapacitated that for more than a year he was incapable of performing any of his duties. During that time he solicited no applications for insurance, collected no premiums, and reported no lapse of policies, nor did he offer to employ anyone to perform those duties on his behalf. Certainly at no time before November 28, 1947, was he able to resume work and then he had not fully recovered. His illness was not merely temporary. It was of such serious character and duration as to materially and injuriously affect the interest of the company.

Immediately following plaintiff's paralytic stroke the Company assigned a salaried employee to collect the premiums, and his route and debit were thus held intact for about two and a half months. However, payment of commissions to him as compensation was discontinued as of January 1, 1947, and thereafter for the ensuing nine months a fixed weekly payment of $15 was made to him. During the third week in January, 1947, collection of the premiums by the salaried employee was discontinued and the route and debit turned over to other agents to be worked by them and included in their accounts. These arrangements which were material departures from the terms of the contract were not questioned by him. At no time during the next nine months did either party abide by the terms of the contract or operate under its provisions. In fact, the agreement was ended, for plaintiff's compensation under the contract ceased and his debit and all of his duties were turned over to and performed by other agents. By letter of September 15, 1947, he was advised that the weekly payment of $15 would be discontinued as of September 29, 1947. The termination of the contract which had taken place in January, 1947, was thus made certain and manifest to him by this communication which advised him of the cessation of all compensation. It also contained this significant paragraph:

"As you know, due to illness the company has kept you on the pay roll for the past year and has put up social security each year since its inauguration, for you. They

feel now, that they have gone as far as could be expected under the circumstances."

Plaintiff's illness and incapacity to perform his duties had, as of January 1947, caused and necessitated a material change in the company's position. This situation continued throughout the ensuing months and on September 15, 1947, when he was finally advised that all remuneration to him was to cease, he was still unable to perform his duties. Though some correspondence thereafter ensued, no further business or contractual relations were entered into by the parties. Plaintiff did, however, appear at the Norfolk office of the Company on November 28, 1947, and requested return of his debit, which was refused.

During January, 1947, the very serious nature and totally incapacitating effect of plaintiff's illness rendered it distinctly improbable if not definitely certain that he would be unable to perform his duties throughout the greater part of that year. This incapacity likewise existed when he was advised on September 15, 1947, of the termination and discontinuance of his connection with the company.

▮ Inability because of illness to perform the personal duties incumbent upon plaintiff under the contract is not expressly set out as a circumstance authorizing its termination. But sickness at some time may be said to be the common lot of all humanity. It is part and parcel of the frailty of human nature. And so the resultant disability for some period of duration is usually experienced by all mankind and contracts for personal services are made with knowledge and realization of that universal truth. Thus, if the agreement be silent upon the subject, temporary disability of short duration as compared with the term of service contemplated does not of itself warrant termination of the contract. However, unless the employer has assumed the risk of incapacity, illness of long duration whereby the employee is rendered unable to substantially perform his duties permits the employer to treat the agreement as terminated. This is likewise true if it is shown to be

distinctly probable that the incapacitating sickness will be so protracted as seriously to impair the consideration to be rendered and believing such to be true, the employer materially changes his position. Restatement of the Law of Contracts, sec. 282.

"One who engages for performance of such personal character that it can be performed only by a particular person is excused from liability by the physical incapacity of that person, before breach of the contract, unless he has clearly assumed the risk of such incapacity. * * *" (Williston on Contracts, Rev. Ed., Vol. 6, sec. 1940.)

"Contracts to perform personal acts are considered as made on the implied condition that the party shall be alive and shall be capable of performing the contract, so that death or disability will operate as a discharge. * * *" (17 C. J. S., Contracts, sec. 465.)

The following decided cases involving inability on the part of the employee to perform personal services because of illness state the employer's rights in the premises thus:

"* * * In the present case the plaintiff was sick about seven weeks, and during that time * * * incapacitated from work in the defendant's shop. We think that as a matter of law this constituted such an interruption and failure to perform his contract on the part of the plaintiff that the defendants were justified in terminating it, and employing another person in his place. * * * But the fact that he was incapacitated by causes beyond his own control, or, as it is termed, by the act of God, did not deprive the defendants of their right to terminate the contract, or oblige them to keep his position for him until he recovered. * * *" (*Johnson* v. *Walker*, 155 Mass. 253, 29 N. E. 522, 31 Am. St. Rep. 550.)

"* * * Likewise, disability to perform, due to accident or illness, may also give rise to a dissolution of the contract. Death does; sickness may. The one absolutely prevents further performance; the other may or may not entirely prevent. Permanent disability doubtless will give

the right to immediately discharge and terminate the contract. Temporary disability of itself does not constitute a valid cause for dismissal. Where, however, the disability is such that it is likely to continue for a considerable period, or to constitute so serious a detriment to the employer as to go to the root of the consideration, the contract may be dissolved. But, in any event, the contract continues in force until the employer manifests his election to terminate it unless the disability is such that further performance is clearly impossible, and it is evident that the employer can derive no further benefit from the contract. (Authorities cited.)" (*Rubin* v. *International Film Co.*, 122 Misc. Rep. 413, 204 N. Y. S. 81, 83.)

"Verly likely, if it had been discovered that the plaintiff's illness was to be one long protracted and was something more than one of a temporary character, making it impossible for him to perform substantially in compliance with the terms of his contract, the defendants would have had an election to regard the contract as breached and become free from obligation to perform on their part. * * *" (*Fahey* v. *Kennedy*, 230 App. Div. 156, 243 N. Y. S. 396, appeal denied, 230 App. Div. 799, 244 N. Y. S. 603.)

■■ There is no fixed or certain formula by which it may always be determined whether or not the illness of an employee obligated to perform personal duties constitutes sufficient cause and justification for his employer to terminate an existing agreement. The nature of the business and duties required by the contract, the character and possible duration of the illness, the necessities of the employer, the effect upon his interest of cessation for a time of the employee's services, whether the duties may be reasonably and substantially performed for a time by another and many other circumstances may enter into and materially influence the right to terminate. Whether or not justification exists for termination of the contract under the facts and circumstances of a particular case is usually a question of fact to be determined by a jury under proper instructions from

the court. But it may be confidently asserted that if the illness be wholly incapacitating and so protracted as to render it impossible for the employee substantially to perform his duties in compliance with the terms of the agreement and the employer's interest be thereby materially affected, he will be afforded an election to regard and treat the contract as broken. If he exercises and makes manifest to the employee his election to terminate the agreement, he will be thereafter freed from the obligation to perform on his part.

With these principles in mind, we are constrained to say that it conclusively appears that plaintiff's illness and inability to perform his duties under the contract materially affected the consideration which he was obligated to render and impaired the interest of the company. The necessity of the occasion required that it adopt other means to protect its rights and interests. Its termination of the contract in January, 1947, was thus justified and its notification to plaintiff of that election while he was still incapacitated was made manifest by the company's conduct throughout the ensuing months and by the written communication of September 15, 1947.

For these reasons, we are of opinion that the judgment should be reversed, the verdict set aside and final judgment entered for the company.

*Reversed and final judgment.*