(617 P.2d 107)

No. 50,851

JOHN L. CUSSIMANIO, *Appellant,* v. KANSAS CITY SOUTHERN RAILWAY COMPANY and UNITED TRANSPORTATION UNION, *Appellees.*

Opinion filed September 26, 1980.

*Fred Spigarelli,* of Pittsburg, for appellant.

*R. L. White,* of White & Hudson, Chartered, of Pittsburg, for appellee Kansas City Southern Railway Company.

*Daniel D. Sawyer,* of Hubbell, Lane & Sawyer, of Kansas City, Missouri, and *Douglas L. Baker,* of Pittsburg, for appellee United Transportation Union.

Before ABBOTT, P.J., REES and PARKS, JJ.

ABBOTT, J.: This is an appeal from an order granting summary judgment against the plaintiff, John L. Cussimanio, and in favor of the defendants, Kansas City Southern Railway Company (employer) and United Transportation Union (union), in plaintiff's suit based on his alleged wrongful discharge from employment and the union's alleged unfair representation.

The essential facts are not in dispute. The record consists solely of pleadings, affidavits and medical reports. The trial court heard no testimony.

Plaintiff was employed as a brakeman. He developed an acoustic neuroma (tumor) involving his right ear. He was granted a medical leave of absence at which time the tumor was removed and after which he had a 100 percent loss of hearing in the right ear.

Plaintiff subsequently requested that he be returned to work as a brakeman. His request was supported by a medical statement from his surgeon, Dr. Keith Whittaker, that he was able to resume his work as a brakeman. Although it is not in the record on appeal, all parties concede in their briefs that Dr. Whittaker agreed plaintiff has a 100 percent loss of hearing in the right ear. In response to plaintiff's request to return to work, the trainmaster advised him by letter that it was the opinion of Dr. Joseph Masucci, chief medical officer for the railroad, that plaintiff's hearing impairment was such that he should not be permitted to work on or around moving equipment or machinery. Dr. Masucci also found a 100 percent loss of hearing in plaintiff's right ear.

Plaintiff is a member of the defendant union. Pursuant to directions from T. H. Blocker, the union's general chairman, plaintiff wrote a letter to the trainmaster requesting an examination by a neutral physician. Blocker wrote a letter to the chief operating officer of the railroad designated to handle employee disputes, requesting either that plaintiff be returned to work immediately or that Article PF-54(c) of the collective bargaining agreement between the railroad and the union be invoked. This section provides in pertinent part:

"When a working employee is held out of service by the company and required to undergo physical examination and it is found in the opinion of the examining physician that he is unable to perform service, if the employee questions that diagnosis he will be privileged to have a physician of his own choosing to examine him. In case of disagreement between his physician and the physician

representing the company, they shall select a neutral physician within a reasonable period, not exceeding 15 days from the date the employee is disqualified, and the decision of the majority of the three will be final. The three physicians will examine the employee and render a report of their findings within a reasonable time, not exceeding 15 days after their selection, setting forth the employee's physical condition and their conclusions *as to whether he meets the requirements of the company's physical examination rules.* The 15-day periods mentioned above may be extended through mutual agreement between the General Chairman and the Vice President-Personnel. If it is determined by the majority that the employee's condition did not warrant his being held from service, he will be returned to service and paid for all time lost." (Emphasis supplied.)

Pursuant to this request, Jerry C. Freeman, M.D., was selected as the neutral physician, and plaintiff was examined by Dr. Freeman on November 21, 1975. The audiological examination by Dr. Freeman confirmed that plaintiff had a total hearing loss in his right ear. In a report from Dr. Freeman to Dr. Masucci, Dr. Freeman stated:

"An audiogram reveals what we might expect, no functioning for the auditory portion of the right ear and an essentially normal left ear. According to AAOO standards this would produce a bineural impairment of only 17% an extremely minimal amount in this case.

"In reviewing your requirements with regard to hearing and use of hearing aids for employees in the area in which Mr. Cussimanio has functioned in the past, I am aware of your requirement with regard to the necessity for being able to hear in each ear independently without amplification.

"Mr. Cussimanio has mentioned to me that he worked in his capacity for the Kansas City Southern Railroad for nearly two years with essentially no hearing in that ear prior to the necessity for the removal of his benign acoustic tumor. Be that as it may, the stringent instructions which you mentioned, if they are to be applied as the letter of the law, would unfortunately exclude him from resuming his duties with you.

"It distresses me a great deal as he is an extremely well motivated young man who is in essentially excellent health and who I feel should most definitely be given an opportunity to prove himself as a completely qualified, capable employee without handicap. I therefore strongly recommend that he be retained by the railroad and that any arrangements necessary be made to expedite this for him."

On the basis that a majority of the three-doctor board agreed plaintiff did not meet the physical requirements of the employer, the employer advised the union that since plaintiff was totally deaf in his right ear he failed to meet the hearing standards and therefore he could not regain his position. Plaintiff requested a re-examination after he had been fitted with a hearing aid, but the employer refused on the basis that there was no change in his

physical condition, and his being fitted with a mechanical appliance that would assist with his hearing did not change the physical impairment that originally disqualified him under the employer's standards.

Plaintiff ultimately filed suit against the employer and the union alleging that the employer wrongfully discharged him and that the union failed to fairly represent him. Plaintiff filed a motion for summary judgment. Both defendants filed motions to dismiss plaintiff's cause of action. The motions for dismissal were correctly considered by the trial court as motions for summary judgment in that matters outside the pleadings in the form of affidavits, admissions and exhibits were presented to and considered by the trial court. K.S.A. 60-212(b). Summary judgment was granted for the defendants and against the plaintiff, and this appeal followed.

Plaintiff agrees that an employer has a right to establish reasonable standards of physical fitness for its employees. He argues that Article PF-54(c) of the collective bargaining agreement provides a method for determining the reasonableness of the employer's physical standards by use of a tripartite medical board presided over by a neutral doctor. The employer and union take the position that the employer has a legal right and duty to set the requirements of the physical condition of its employees for the various job classifications, and the function of the tripartite board is only to ascertain whether the workers' physical condition meets those standards.

The initial employment requirements for brakemen include that the applicant must hear ordinary conversations with *each* ear separately at a distance of twenty feet. They are not permitted to work with the use of a hearing aid. If ever a re-examination is required, as it was in this case, the employee must hear an ordinary conversation in one ear at not less than ten feet and in the other ear at not less than fifteen feet. In *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 54, 551 P.2d 779 (1976), the Kansas Supreme Court set out the following rule:

"This court follows the general rule that in the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he has been discharged. (*Johnston v. Farmers Alliance Mutual Ins. Co.,* 218 Kan. 543, 545 P.2d 312; *Lorson v. Falcon Coach, Inc.,* 214 Kan. 670, 522 P.2d 449; *May v.*

*Santa Fe Trail Transportation Co.,* 189 Kan. 419, 370 P.2d 390; *Swart v. Huston,* 154 Kan. 182, 117 P.2d 576; and 53 Am. Jur. 2d, Master and Servant, § 43, pp. 117-118.)"

See *Mildfelt v. Lair,* 221 Kan. 557, 563, 561 P.2d 805 (1977). An employer may agree as a part of an employment contract to limit its otherwise absolute right to discharge or discipline its employees. *Jorgensen v. Pennsylvania R.R. Co.,* 25 N.J. 541, 138 A.2d 24, 72 A.L.R.2d 1415 (1958). Here, the employer chose to limit its power to discharge its physically disabled employees by entering into a collective bargaining agreement containing an arbitration method for the resolution of disputes over discharge based on an employee's failure to meet *requisite physical standards.* This fact, however, does not limit the right of the employer to discharge plaintiff for physical disability; it merely sets out a mandatory procedure for determining whether such a disability exists. Here, the express provisions of the collective bargaining agreement were fully complied with and the result of the arbitration dictates that plaintiff does not possess the physical capacity to return to service.

Whether in any particular case an employer can discharge its employees without cause and not incur liability is a question that is to be resolved with reference to the express and implied terms of the contract. *Held v. American Linen Supply Co.,* 6 Utah 2d 106, 307 P.2d 210 (1957); 53 Am. Jur. 2d, Master and Servant § 43.

Generally, an employer may terminate an employment contract when because of illness or injury an employee is unable to perform for a substantial part of the term of the contract and the employer's interests are materially affected thereby unless there is a stipulation to the contrary. 53 Am. Jur. 2d, Master and Servant § 50; Annot., 21 A.L.R.2d 1247. Stated another way, unless the employer has assumed the risk of incapacity, illness of long duration whereby the employee is rendered unable to substantially perform his duties permits the employer to treat the employment agreement as terminated. *Citizens Home Ins. Co. v. Glisson,* 191 Va. 582, 61 S.E.2d 859 (1950). Plaintiff here offers no evidence to show such an assumption of risk on the part of the employer. As a matter of public policy, employers must have the right to establish reasonable standards of physical fitness for their employees to insure insofar as possible that work is performed by

employees who will not endanger themselves, their fellow employees or the public at large. The employee has substantial responsibility in moving large pieces of equipment that may be strung together in a line involving a great distance. The safety of workers, their fellow workers, and the public at large would dictate that an employee involved in moving that kind of equipment who must be outside in all kinds of weather have at least normal hearing. The employer's physical examination requirements for brakemen appear reasonable. As we construe the bargained for employment contract, the tripartite medical board's function is to ascertain if employees meet the required physical standards, not ascertain the reasonableness of those standards. The trial court did not err in granting summary judgment for the defendants.

Plaintiff next contends that by reason of its failure to appeal the grievance to the National Railroad Board pursuant to 45 U.S.C. § 153 First (i) (1976), the union did not fairly represent him. A brief history of the development of union liability for unfair representation of its members and the circumstances under which it applies are well set out in *Bazarte v. United Transportation Union,* 429 F.2d 868, 871-72 (3rd Cir. 1970), another case involving the defendant union:

"The fiduciary duty of fair representation in the negotiation, administration and enforcement of collective bargaining agreements has been imposed upon unions by federal law as an obligation correlative to the right of a union to represent all the employees in a bargaining unit as their exclusive bargaining agent despite the contrary wishes of a minority. The duty originated in cases under the Railway Labor Act in which railroad unions were charged with racial discrimination. It has since been expanded as a principle of general application to collective bargaining representatives, who are required to 'serve the interest of all members without hostility or discrimination toward any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct.'

"This doctrine, however, does not confer on an employee an absolute right to force his collective bargaining agent to press his complaint all the way to the very end of the grievance procedures made possible by the collective bargaining agreement. The union has an obligation in exercising its power as bargaining agent to act fairly under the collective bargaining agreement and not to assert or press grievances which it believes in good faith do not warrant such action. An employee, therefore, is subject to the union's discretionary power to settle or even to abandon a grievance, so long as it does not act arbitrarily, and this is true even if it can later be demonstrated that the employee's claim was meritorious. It is therefore essential to plaintiff's claim that there should have been proof of 'arbitrary or bad-faith conduct on the part of the Union in processing his grievance.' It follows from this that proof that the union may have acted negli-

gently or exercised poor judgment is not enough to support a claim of unfair representation.

. . . .

". . . Nor is the union's failure to inform plaintiff of its decision not to go forward with his case enough to establish unfair representation, especially since there is no showing that this prejudiced him in any way, and his retained counsel evidently did not pursue his grievance."

See *Vaca v. Sipes,* 386 U.S. 171, 17 L.Ed.2d 842, 87 S.Ct. 903 (1967).

Here, the union offered the affidavit of T. H. Blocker, its general chairman, to the effect that it took all of the necessary steps in handling plaintiff's grievance except for appealing the finding of the neutral doctor to the adjustment board, which it declined to do because it believed the provisions of the collective bargaining agreement had been fully complied with and the appeal would be to no avail. The record contains no evidence to the contrary, thereby making summary judgment an appropriate remedy. *Farmers Ins. Co. v. Schiller,* 226 Kan. 155, 158, 597 P.2d 238 (1979). We are of the opinion the trial court did not err in granting summary judgment to the union.

Defendant employer raises an alternate defense alleging that plaintiff failed to exhaust his administrative remedies by presenting his grievance appeal to either the National Railroad Adjustment Board or a public law board. While the employer's argument may have merit (see *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 32 L.Ed.2d 95, 92 S.Ct. 1562 [1972]), this Court will not consider the matter as it has no jurisdiction to do so. The trial court held that an appeal to the adjustment board or a public law board would be useless as they would have no power to override the opinion of the neutral doctor and could only certify that the correct procedures under the collective bargaining agreement had been employed. The employer did not file a notice of appeal from the trial court's adverse ruling, thus we have no jurisdiction.

We recognize there is an exception to this general rule relating to cross-appeals in that a question of subject matter jurisdiction can be raised at any time during the proceedings, even by the courts *sua sponte.* Although exhaustion of administrative remedies may appear on its face to involve subject matter jurisdiction, it does not. Exhaustion of administrative remedies is a matter within the sound discretion of the courts and is not required

when administrative remedies are inadequate. *NLRB v. Marine Workers,* 391 U.S. 418, 426 n. 7, 20 L.Ed.2d 706, 88 S.Ct. 1717 (1968). In *Jarvis v. Kansas Commission on Civil Rights,* 215 Kan. 902, 528 P.2d 1232 (1974), the Kansas Supreme Court, quoting *Jenkins v. Newman Memorial County Hospital,* 212 Kan. 92, 510 P.2d 132 (1973), stated at pages 905-06:

"It is clear the rehearing requirement is provided as a proper administrative law procedure in order to assure exhaustion of administrative remedies. The doctrine of exhaustion of administrative remedies is directed toward promoting proper relationships between the courts and administrative agencies charged with particular administrative and regulatory duties. It promotes orderly procedure and requires a party to exhaust the administrative sifting process with respect to matters peculiarly within the competence of the agency. It requires avoidance of interference with functions of the administrative agency by withholding judicial action until the administrative process has run its full course. The failure to exhaust administrative remedies has often been emphasized as a ground for denying judicial review. *It rests on sound consideration of comity and convenience,* fully recognizing the separation of powers doctrine as set forth in our case law. (*Colorado Interstate Gas Co. v. State Corporation Comm.* [192 Kan. 1, 386 P.2d 266]; *Graves Truck Line v. State Corporation Commission* [195 Kan. 82, 402 P.2d 757]; *Strader v. Kansas Public Employees Retirement System,* 206 Kan. 392, 479 P.2d 860, cert den. 403 U.S. 914, 29 L.Ed.2d 692, 91 S.Ct. 2240.)" (Emphasis supplied.)

Comity and subject matter jurisdiction are not equivalent concepts. Thus, the exception does not apply and we have no jurisdiction to decide the question presented by the employer.

Affirmed.