Norman RICHARDSON, Plaintiff,

v.

FOWLER ENVELOPE CO.,
LLC, et al., Defendants.

No. CIV.A. 03–2129–KHV.

United States District Court,
D. Kansas.

Oct. 27, 2003.

Norman Richardson, Kansas City, MO, Pro se.

David M. Kight, Karen M. Gleason, Shugart Thomson & Kilroy, PC——Kansas City, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Norman Richardson, *pro se*, brings suit against Fowler Envelope Company, LLC ("Fowler Envelope"), St. Louis Envelope Company ("St. Louis Envelope"), Dave Perkins, Jeff Neusel and Dale Sharp alleging that defendants violated the Fair Labor Standards Act of 1938, 28 U.S.C. § 1343, and Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000 *et seq.* Plaintiff also brings state law claims of fraud, misrepresentation, misconduct and

breach of a covenant of good faith and fair dealing. This matter comes before the Court on *Defendant St. Louis Envelope Company's Motion To Dismiss Plaintiff's Complaint And Suggestions In Support* (Doc. # 17) filed May 7, 2003, and *Defendants' Motion To Dismiss Plaintiff's Complaint Pursuant To Fed.R.Civ.P. 12(b)(6)* (Doc. # 20) filed May 15, 2003. For reasons set forth below, the Court finds that the motions should be sustained in part.

### Facts

Plaintiff's complaint alleges the following facts:

Fowler Envelope is a Kansas corporation that manufactures envelopes. St. Louis Envelope, a Missouri corporation, is the parent company of Fowler Envelope. Plaintiff began working for Fowler Envelope in January, 2001. Although plaintiff routinely worked more than 40 hours per week, Fowler Envelope did not pay him overtime wages required by state and federal law. When plaintiff requested overtime pay, Fowler Envelope fired him with no valid reason.

On May 10, 2002, plaintiff filed a claim for unemployment benefits with the Kansas Department of Human Resources ("KDHR"). Paula Buckridge, an auditor for the State of Kansas, investigated the unemployment claim. Fowler Envelope intentionally misrepresented to KDHR that plaintiff started working in September, 2002 and that plaintiff was a contract worker.[1] Plaintiff gave Buckridge pay stubs which showed that he had worked for Fowler Envelope since January of 2001. Buckridge threatened Fowler Envelope with court action if it did not produce accurate copies of time cards showing how much plaintiff had worked. Ultimately Fowler Envelope produced the cards.

---

1. An employer does not pay unemployment tax for sums paid to independent contractors.

Buckridge discovered $10,525.75 of unreported income and based on this income, plaintiff received additional unemployment benefits of $3,300.00.

Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC"), which sent him a questionnaire and referred him to the Department of Labor for his overtime claim. Plaintiff does not assert that he filed a charge of discrimination with the EEOC.

On August 1, 2002, plaintiff filed a complaint with the Department of Labor, seeking unpaid overtime from Fowler Envelope. The Department of Labor assigned investigator Puttroff to investigate plaintiff's complaint. Plaintiff gave Puttroff information about other workers who worked more than eight hours per day, six or seven days per week, but were not paid overtime. After discussing the matter with Fowler Envelope, Puttroff told plaintiff that her investigation indicated that except for the information about plaintiff's own situation, the information which plaintiff had provided was accurate. Plaintiff then asked Puttroff to contact Buckridge to confirm that Fowler Envelope had misrepresented the amount of time he had worked. Puttroff obtained the information from Buckridge and confronted Fowler Envelope with the information. At that point Fowler Envelope finally gave Puttroff accurate records of plaintiff's work hours and agreed to pay plaintiff overtime. Puttroff did not contact plaintiff about what action the Department of Labor would take, and he had to call her. Puttroff told plaintiff that she had not contacted him because Fowler Envelope was considering paying his back overtime wages in installments over a six-month period. Plaintiff told Puttroff that this was not acceptable and asked her why she did not let him know. Puttroff told him that she was the investigator and that she had no duty to confer with him.

Plaintiff later met with Puttroff, who told him that Fowler Envelope would pay him $1,100.00 over the course of a year. Puttroff was rude to plaintiff and acted "as if it was plaintiff's fault." Plaintiff then wrote Fowler Envelope a letter asking it to "mitigate damages for wrongful termination, failure to pay overtime, taxes and other payments due." On January 27, 2003, Fowler Envelope sent plaintiff a check for $243.37. On February 8, 2003 it sent him a check for $61.50.

Plaintiff filed suit on March 10, 2003, alleging that defendants violated the Fair Labor Standards Act of 1938, 28 U.S.C. § 1343 ("FLSA"), and Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000 *et seq.* Plaintiff also asserted state law claims of fraud, misrepresentation, misconduct and breach of a covenant of good faith and fair dealing. Plaintiff seeks back pay for overtime wages of more than $3,000.00 plus interest, punitive damages of $200,000.00 or more, and $30,000.00 for wrongful termination.

St. Louis Envelope asserts that this Court must dismiss plaintiff's claims against it for lack of personal jurisdiction. *See* Rule 12(b)(2), Fed.R.Civ.P. The remaining defendants assert that they are entitled to dismissal of all but plaintiff's FLSA claim. Specifically, defendants assert that the Court lacks subject matter jurisdiction over plaintiff's claims under Title VII (Count II) because plaintiff has not alleged exhaustion of administrative remedies. Defendants assert that they are entitled to dismissal of plaintiff's state law claims for fraud (Count III), misrepresentation (Count IV), misconduct (Count V) and breach of a covenant of good faith and fair dealing (Count VI) because they do not state claims upon which relief can be granted.

### Standards For Motions To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiff. *See Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987). The Court affords a *pro se* plaintiff some leniency and must liberally construe the complaint. *See Oltremari v. Kan. Soc. & Rehab. Servs.,* 871 F.Supp. 1331, 1333 (D.Kan.1994). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support his claims. Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

### Analysis

**I. St. Louis Envelope's Motion To Dismiss**

St. Louis Envelope asserts that this Court must dismiss plaintiff's claims for lack of personal jurisdiction. *See* Rule 12(b)(2), Fed.R.Civ.P. Specifically, St. Louis Envelope asserts that plaintiff has not alleged that it has sufficient contacts with Kansas to establish that this Court has personal jurisdiction over it. Plaintiff cites the allegation that St. Louis Envelope is the parent corporation of Fowler Envelope, a Kansas corporation, and argues that this fact is sufficient to establish personal jurisdiction over St. Louis Envelope.

The Court has discretion to consider a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R.Civ.P., based on affidavits and other written material. *See Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984). If the Court so chooses, plaintiff must make only a prima facie showing of jurisdiction to avoid dismissal. *See Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995). Of course plaintiff eventually must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. Until such a hearing is held, a prima facie showing suffices, notwithstanding any contrary presentation by the moving party. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 456 (10th Cir.1996). If defendant challenges the jurisdictional allegations, plaintiff must support the jurisdictional allegations in a complaint by competent proof of the supporting facts. *Pytlik v. Prof'l Res., Ltd.,* 887 F.2d 1371, 1376 (10th Cir.1989). All factual disputes, however, are resolved in plaintiff's favor. *See id.* Further, the allegations in the complaint must be taken as true to the extent that they are uncontroverted by defendant's affidavits. *Intercon,* 205 F.3d at 1247 (only well pled facts, as distinguished from conclusory allegations, accepted as true).

The Court applies a two-part test to analyze Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction over a nonresident defendant. First, defendant's conduct must fall within a provision of the Kansas long-arm statute, K.S.A. § 60–308. Kansas courts construe the long-arm statute liberally to assert personal jurisdiction over nonresident defendants to the full extent permitted by the limitations of due process. *Volt Delta Res. Inc. v. Devine,* 241 Kan. 775, 777, 740 P.2d 1089, 1092 (1987). Second, defendant must have suf-

ficient minimum contacts with Kansas to satisfy the constitutional guarantee of due process. *See Equifax Serv., Inc. v. Hitz,* 905 F.2d 1355, 1357 (10th Cir.1990); *see World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (court may exercise personal jurisdiction over nonresident defendant only so long as "minimum contacts" exist between defendant and forum state).

### A. The Kansas Long–Arm Statute

St. Louis Envelope asserts that plaintiff has asserted no facts to support exercise of personal jurisdiction under the Kansas long-arm statute, K.S.A. § 60–308(b), which provides in pertinent part as follows:

**Submitting to jurisdiction—process.** Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

(1) Transaction of any business within this state;

(2) commission of a tortious act within this state;

(3) ownership, use or possession of any real estate situated in this state;

(4) contracting to insure any person, property or risk located within this state at the time of contracting;

(5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state . . .

Although it appears that plaintiff might rely upon subsection (1) "transaction of any business within the state" or (2) "commission of a tortious act within this state,"

plaintiff does not identify any statutory basis for personal jurisdiction in response to defendant's motion to dismiss. Plaintiff has not made a made a prima facie showing that the Court has personal jurisdiction over St. Louis Envelope under K.S.A. § 60–308(b).

### B. Due Process

The second aspect of the test is whether this Court's exercise of jurisdiction satisfies constitutional due process requirements. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Due process requires "minimum contacts" between the nonresident defendant and the forum state. *Id.* This standard may be satisfied in one of two ways. First, specific jurisdiction exists over a matter in the forum state if defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1532 (10th Cir.1996) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Second, general jurisdiction exists if "defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state." *Trierweiler,* 90 F.3d at 1533 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). In either case, defendant must reasonably be able to anticipate being haled into court in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Also, jurisdiction in the particular case must be reasonable so as not to offend traditional notions of fair play and substantial justice. *See World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559.

Plaintiff asserts that the Court can maintain jurisdiction over St. Louis Envelope because St. Louis Envelope is the parent company of Fowler Envelope, which is a Kansas corporation.[2] The existence of a relationship between a "subsidiary corporation and its parent or holding company [is] highly probative of the quality and nature of the non-resident's contact with the forum through an affiliated corporation." *Hoffman v. United Telecomm.*, 575 F.Supp. 1463, 1471 (D.Kan.1983) "The activity or presence in the forum of a corporation that either owns or is owned by a non-resident corporation is usually an affiliating circumstance of the non-resident with the forum." *Id.*, (citing *Energy Reserves Group, Inc., v. Superior Oil Co.*, 460 F.Supp. 483, 508 (D.Kan.1978)). In *Hoffman*, this Court found that the existence of a relationship between an in-state corporation and out-of-state subsidiary was a beginning point in the jurisdictional analysis. The Court then analyzed the degree of control from the forum corporation, and the flow of benefits or funds to and from the forum. The ultimate inquiry, of course, remains whether "defendant may be said to have purposefully availed itself of the benefits and protections of the forum." 575 F.Supp. at 1472.

In response to St. Louis Envelope's motion to dismiss, plaintiff states that he intends to produce evidence that St. Louis Envelope owns Fowler Envelope. In *Plaintiff's Supplemental Motion In Response To Defendants Motions To Dismiss Plaintiff's Suit* (Doc. # 38) filed July 17, 2003, plaintiff attaches a Department of Labor narrative which states that Fowler Envelope serves "the four-state area" and that "the corporate office is located at 4257 Clayton Avenue, St. Louis Missouri." Based on this document plaintiff asserts that St. Louis Envelope owns Fowler Envelope. The document, however, does not refer to St. Louis Envelope. More importantly, plaintiff does not offer any facts regarding the details of the alleged relationship between the parent and the subsidiary.[3] Plaintiff has not alleged that St. Louis Envelope controls the actions of Fowler Envelope. *Cf. Hoffman*, 575 F.Supp. at 1472 (existence of a relationship between affiliated corporation may render personal jurisdiction constitutional if relevant factors, including convenience and orderly administration of justice balance in that direction). The Court therefore finds that defendant St. Louis Envelope is entitled to dismissal for lack of personal jurisdiction.[4]

## II. Defendants' Motion To Dismiss Plaintiff's Title VII and State Law Claims [5]

The remaining defendants assert that the Court should dismiss all of plaintiff's

---

**2.** Plaintiff does not specify whether he contends that the Court has general or specific jurisdiction over St. Louis Envelope.

**3.** In plaintiff's response, he asks the Court to order St. Louis Envelope to "provide to the Court the seemingly unconcerned truth of the matter in question here, *i.e.*, Does Defendant St. Louis Envelope, (STEVE NEUSEL, father of Defendant JEFF NEUSAL) own Defendant Fowler?" *Plaintiff's Answer To Defendant St. Louis Envelope's Motion To Dismiss Plaintiff's Complaint* (Doc. # 23) filed May 28, 2003.

**4.** St. Louis Envelope also asserts that plaintiff has failed to allege any claims upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). Specifically, St. Louis Envelope points out that plaintiff broadly alleges only that St. Louis Envelope knew of "alleged illegal acts" by the individual defendants and did not stop them. Further, plaintiff does not assert that he ever worked for St. Louis Envelope. Because the Court has found that plaintiff has failed to present a prima facie showing of personal jurisdiction, it does not reach this argument.

**5.** Defendant St. Louis Envelope joins in this

claims except his FLSA claim. Specifically, defendants assert that the Court lacks subject matter jurisdiction over plaintiff's claims under Title VII (Count II) because plaintiff has not alleged exhaustion of administrative remedies. Defendants assert that they are entitled to dismissal of plaintiff's state law claims for fraud (Count III), misrepresentation (Count IV), misconduct (Count V) and breach of a covenant of good faith and fair dealing (Count VI) because none of these counts state a claim on which relief can be granted.

### A. Title VII (Count II)

Defendants assert that the Court must dismiss plaintiff's Title VII claim because he has not alleged exhaustion of administrative remedies.[6] Title VII requires plaintiff to exhaust administrative remedies before filing suit in federal court. *See, e.g., Khader v. Aspin,* 1 F.3d 968, 971 n. 3 (10th Cir.1993). Failure to exhaust is a jurisdictional bar to filing suit. *See Jones v. Runyon,* 91 F.3d 1398, 1399 n. 1 (10th Cir.1996). Plaintiff does not allege that he filed charges of discrimination with either the EEOC or the Kansas Human Rights Commission. Because plaintiff does not claim that he filed any such charges, he cannot meet his burden of pleading exhaustion of administrative remedies.[7] Thus his complaint fails on its face to allege facts which establish subject matter jurisdiction. *See, e.g., Harms v. I.R.S.,* 146 F.Supp.2d 1128, 1133 (D.Kan.2001). Defendants' motion to dismiss plaintiff's claim under Title VII is sustained.

### B. State Law Claims Of Fraud (Count III), Misrepresentation (Count IV) and Misconduct (Count V)

In his complaint, plaintiff alleges that defendants intentionally under-reported his wages and time worked, and fraudulently categorized him as a contract worker to avoid paying unemployment taxes on his wages and overtime compensation under the FLSA. When the KDHR investigated the matter, it found that plaintiff was entitled to an additional $3,300.00 in unemployment benefits. Defendants assert that they are entitled to dismissal of plaintiff's state law claims for fraud, misrepresentation and misconduct because plaintiff did not exhaust his state administrative remedies on his underlying unemployment claim.

Defendants argue that under Kansas law, where administrative remedies are available, plaintiff must ordinarily show that he exhausted those remedies before resorting to the courts. *See Zarda v. State,* 250 Kan. 364, 826 P.2d 1365, 1367 (1992). "The doctrine of exhaustion of administrative remedies is directed toward promoting proper relationships between

---

motion with all other defendants. The motion is moot as to St. Louis Envelope, however, because the Court has found that it lacks personal jurisdiction over St. Louis Envelope.

6. In Count II of his complaint, plaintiff alleges that Fowler Envelope violated Title VII when it terminated him for no valid reason, "contrary to termination policy." Plaintiff does not specify what type of discrimination he alleges.

7. In *Plaintiff's Supplemental Motion In Response To Defendants Motions To Dismiss Plaintiff's Suit* (Doc. # 38) filed July 17, 2003, plaintiff points to a document titled "NOTICE" which is the cover sheet for an EEOC questionnaire with "Filed 10–8–02" handwritten across it. *Id.* Ex. 1. The notice states that "by completing and returning the attached questionnaire, you will have established an inquiry file. You have not yet filed a charge." *Id.* Plaintiff states that together with the original complaint, this document establishes subject matter jurisdiction. The Court disagrees. Even if plaintiff had alleged that he submitted the questionnaire, the questionnaire does not constitute a charge of discrimination filed with the EEOC.

the courts and administrative agencies charged with particular administrative and regulatory duties. It promotes orderly procedure and requires a party to exhaust the administrative sifting process with respect to matters peculiarly within the competence of the agency." *Jenkins v. Newman Mem'l County Hosp.*, 212 Kan. 92, 95, 510 P.2d 132 (1973); *cf. Cussimanio v. Kan. City S. Ry. Co.*, 5 Kan.App.2d 379, 385–86, 617 P.2d 107, 113 (1980) (court need not require exhaustion where administrative remedies are inadequate). In K.S.A. § 44–709, the Kansas legislature set forth an administrative process for unemployment benefit claims. That statute provides for initial determination by an examiner, appeal to a referee within sixteen days; appeal to the board of review within sixteen days; and court review within sixteen days. Unless the administrative procedures have been invoked and completed, there is nothing the district court, or any court, may review. *Zimmerman v. Bd. of Review of Empl. Sec. Div. of State Lab. Dep't*, 208 Kan. 68, 71, 490 P.2d 359 (Kan.1971). Plaintiff, however, is not seeking review of the KDHR determination of the amount of his unemployment claim. Rather, he claims that defendants engaged in fraud, misrepresentation and misconduct in responding to the KDHR investigation. Defendants have not shown that they are entitled to dismissal of these state law claims.

Liberally construed, the complaint also alleges that the defendants engaged in fraud, misrepresentation and misconduct in reporting the number of hours that plaintiff worked and thus in determining his overtime wages under the FLSA. Although such claims may be preempted by the FLSA, defendants do not address this aspect of plaintiff's complaint in their motion to dismiss. The Court therefore finds that plaintiff's claims of fraud, misrepresentation and misconduct in reporting plaintiff's hours and determining overtime wages under the FLSA remain in the case.

### C. Covenant Of Good Faith And Fair Dealing (Count VI)

██ Defendants assert that the Court should dismiss plaintiff's claim that they breached a covenant of good faith and fair dealing because Kansas courts do not imply a covenant of good faith and fair dealing in employment-at-will contracts. *See Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841 (1987). Plaintiff does not dispute his at-will employment status. The Court therefore finds that defendants are entitled to dismissal of plaintiff's claim for breach of a covenant of good faith and fair dealing.

**IT IS THEREFORE ORDERED** that *Defendant St. Louis Envelope Company's Motion To Dismiss Plaintiff's Complaint and Suggestions In Support* (Doc. # 17) filed May 7, 2003 be and hereby is **SUSTAINED**. Plaintiff has not made a prima facie showing personal jurisdiction over St. Louis Envelope. Plaintiff's claims against St. Louis Envelope are therefore **DISMISSED**.

**IT IS FURTHER ORDERED** that *Defendants' Motion To Dismiss Plaintiff's Complaint Pursuant To Fed.R.Civ.P. 12(b)(6)* (Doc. # 20) filed May 15, 2003 be and hereby is **SUSTAINED** as to Count II (Title VII).

**IT IS FURTHER ORDERED** that *Defendants' Motion To Dismiss Plaintiff's Complaint Pursuant To Fed.R.Civ.P. 12(b)(6)* (Doc. # 20) filed May 15, 2003 be and hereby is **OVERRULED** on Counts III, IV, and V (fraud, misrepresentation and misconduct) and **SUSTAINED** as to Count VI ( covenant of good faith and fair dealing).

**IT IS FURTHER ORDERED** that plaintiff's claim that defendants Fowler

Envelope, Jeff Neusel, Dave Perkins and Dale Sharp violated the FLSA (Count I) remains in the case.