THOMAS F. FAHEY, Appellant, *v.* THOMAS P. B. KENNEDY and Another, Doing Business under the Firm Name and Style of KENNEDY BROTHERS, and Also under the Name of KENNEDY GARAGE, Respondents.

Third Department, June 27, 1930.

*Wiswall, Walton, Wood & MacAffer* [*Frank L. Wiswall* and *Carl O. Olsen* of counsel], for the appellant.

*Charles E. Brennan,* for the respondents.

DAVIS, J. The plaintiff seeks to recover in this action damages for the breach of his contract of employment by the defendants. The latter claim the plaintiff on his part failed to perform due to a long illness.

The contract was made about November 23, 1924. By it the defendants agreed to employ the plaintiff as the superintendent of their garage in the city of Albany. There had been oral negotiations between the parties culminating in an agreement for five years at a monthly salary of $300 for the first year and $350 a month for the next two years and $375 per month for the remaining two years; and the defendants wrote a letter on the date stated confirming those conversations. The plaintiff accepted the employment by taking charge of the defendants' business and acting as superintendent until the 3d day of December, 1927, when he fell ill. His wages were paid regularly until January 1, 1928. The act of the plaintiff in going to work and the subsequent conduct of the parties constituted a binding acceptance of the contract, as its terms were mutually understood, without formal notice of acceptance by the plaintiff. (Williston Cont. § 68; *Wood* v. *Duff-Gordon*, 222 N. Y. 88.)

The principal controversy here relates to whether or not the contract was terminated by the illness of the plaintiff. There is no general or well-established rule as to whether the illness of an employee constitutes sufficient cause for the employer to terminate the contract, or whether the employee, under such circumstances, may be discharged from his obligation to perform. Much depends upon the facts disclosed in the particular case. The period of illness, its nature, the kind of service rendered and many other facts must be considered as bearing upon the question of whether the employee is fairly performing the obligations he had assumed. That men may become sick is one of the commonest experiences. Both parties know it when they make contracts for personal service. Just what they may contemplate in that contingency, if nothing is said on the subject in advance, must be determined when the facts of the situation are presented. (*Wolfe* v. *Howes*, 20 N. Y. 197; *Johnson* v. *Walker*, 155 Mass. 253; *Dickey* v. *Linscott*, 20 Me. 453; 1 Labatt Mast. & Serv. [2d ed.] §§ 220–220-d.) Parties may, of course, by apt words bind themselves and become liable on a contract impossible to perform. (Williston Cont. § 1294.) There appears to have been nothing in this contract relating to the contingency that illness might render the contract impossible of performance or cause a substantial interruption thereof. Where the services to be rendered are of immediate necessity or are of such a special character that no ordinary person can perform them, and it is necessary to obtain the services of a skilled person in order to

continue the business, the protracted illness of such an employee furnishes ground for the employer to declare the contract at an end. (*Spalding* v. *Rosa*, 71 N. Y. 40; *Rubin* v. *International Film Co.*, 122 Misc. 413; *Shaw* v. *Ward*, 170 N. Y. Supp. 36; *Hubbard* v. *Belden*, 27 Vt. 645; *Johnson* v. *Walker*, *supra*.)

The plaintiff, as we have said, became ill on December 3, 1927, and later was taken to a hospital. His condition improved and during his convalescence for a time he went away for recuperation on the advice of his physician. He returned on February twentieth in a condition of health to resume his employment. In the meantime the business had been conducted by a force of men he had organized, so that the employment of a new superintendent does not appear to have been necessary. During the time of his illness he was in contact with his employers by telephone and by personal calls they made on him. They had notice of his condition of health and of his convalescence and departure for recuperation, advised him that it was all right and were very considerate in their attitude toward him. Nothing whatever was said between them concerning any inconvenience they were suffering by his absence, the necessity of employing another in his place or their purpose to regard the contract terminated.

When plaintiff returned and had notified them he was ready to work, the defendants called him to their place of business and had a personal interview with him. They made complaints about what appear to be trivial delinquencies during the preceding two years, then (taking the view of the evidence most favorable to plaintiff) they said, as plaintiff testifies: " They had been checking up their business since I left and they found out their business wasn't as good as they expected to do in their business, and that they couldn't afford to carry me and pay me the salary I had been getting any longer, and they would offer me a proposition of $60 a week and they would give me a day off a week, which I never had before." Plaintiff asked them if there was any other reason for it than that and they said there was not. The plaintiff declined to accept the alternative employment and stood on his contract. He sued and had a verdict in the City Court; but that verdict was set aside and the complaint was dismissed on a reserved motion, on the ground that the defendants had the right to declare the contract terminated because of the long period of illness of the plaintiff.

Very likely, if it had been discovered that the plaintiff's illness was to be one long protracted and was something more than one of a temporary character, making it impossible for him to perform substantially in compliance with the terms of his contract, the defendants would have had an election to regard the contract as

breached and become free from obligation to perform on their part. (Williston Cont. §§ 1935, 1940, 1942; *McGarrigle* v. *McCosker*, 83 App. Div. 184; *Wells* v. *Haff*, 165 id. 705; *Miller* v. *Gidiere & Marmande,* 36 La. Ann. 201.)   On the other hand, they might forbear to declare a breach, waiving their rights and elect to hold the plaintiff to performance on his part.   This he would be required to do unless his visitation of sickness rendered performance impossible and constituted what is commonly called an "Act of God."   (*Patrick* v. *Putnam,* 27 Vt. 759; *Parker* v. *Macomber,* 17 R. I. 674.)   Just when in the course of a temporary illness this election may be exercised is difficult to determine, depending largely upon the nature of the employment and the necessities of the employer.   If under ordinary circumstances the employee is in condition to return to his employment within a reasonable time, his illness will not be regarded as a definite breach of the contract.   (*Fisher* v. *Monroe,* 16 Daly, 461.) What constitutes a reasonable time is ordinarily a question of fact. (*Spindel* v. *Cooper,* 46 Misc. 569; *Silverman* v. *Tesler,* 162 N. Y. Supp. 737.)   The illness does not *ipso facto* breach the contract. (*Bassett* v. *French,* 10 Misc. 672, 677; app. dism., 155 N. Y. 46; *Spindel* v. *Cooper, supra.*)   Occasionally the question has arisen where the sickness terminated in death and it was sought to recover for the services performed.   At other times there has been a claim to recover for services during the period of illness.   This case is not complicated by any such claims or circumstances.   The plaintiff was restored to health and capable of rendering the services he had contracted to perform.   He is not seeking to recover anything for the period of his illness.

We think that the failure of the defendants to notify the plaintiff during the time he was ill that his contract was ended, their conduct during that period and the excuses they finally made when plaintiff was ready to return to work, do not indicate, as the case now stands, that they were exercising the election they may have had, but rather were seizing upon his illness as an excuse to extricate themselves from a contract becoming burdensome, and to suit purposes of their own convenience and advantage.   (See *Gaynor* v. *Jonas,* 104 App. Div. 35, 38.)   Their prior conduct may, as a question of fact, operate as a waiver of their rights.   (*Spindel* v. *Cooper, supra.*)   Therefore, they do not now stand in the place of employers injured by the inability of their employee to perform valuable services imperative to the success of their business.   We regard it as a question of fact as to whether they were justified in discharging plaintiff under the circumstances above detailed.   For the reason that all of these questions were not submitted to the jury

so that they could be passed upon in the light of proper instructions, we think that there must be a new trial.

The judgment should be reversed on the law and a new trial granted in City Court, with costs to the appellant to abide the event.

VAN KIRK, P. J., HINMAN and WHITMYER, JJ., concur; HASBROUCK, J., dissents and votes for affirmance.

Judgment reversed on the law and new trial granted, with costs to the appellant to abide the event.