ROLLINGER, Respondent, v. DAIRYLAND CREAMERY CO., Appellant

(287 N. W. 333.)

(File No. 8259. Opinion filed August 16, 1939.)

*Bailey, Voorhees, Woods & Bottum,* of Sioux Falls, for Appellant.

*Jones, Matthews & Fitzpatrick,* of Sioux Falls, for Respondent.

SMITH, J. This appeal is from an order of the trial court overruling a demurrer of defendant to plaintiff's complaint. The demurrer challenged the complaint upon the ground that it failed

.to state facts sufficient to constitute a cause of action in favor of plaintiff against the defendant.

The complaint reads as follows:

"First: That he is and has been since on or about October 12, 1938, by order of the County Court within and for Minnehaha County,- South Dakota, the duly appointed, qualified and acting Guardian of the estate of Emil E. Skoug, an incompetent.

"Second: That the defendant is a corporation duly organized, existing and doing business as such, and having its principal place of business at Sioux Falls, South Dakota.

"Third: That for approximately eleven years prior to the month of May, 1935, Emil E. Skoug and Anton E. Skoug, his brother, were the principal officers of and in the active management of and the owners of a controlling proportion of the stock of the Skoug Candy Company, a South Dakota corporation, having its principal place of business at Sioux Falls, South Dakota, engaged in the business of the manufacture and sale at wholesale of ice cream and frozen dessert products and confectionery and of confectionery jobbing, and for a number of years prior to May, 1935, the said Skoug Candy Company was engaged in the general dairy and creamery business in the said City of Sioux Falls, processing and selling at wholesale and retail a general or complete line of dairy products.

"Fourth: That for approximately seventeen years before the formation of the said Skoug Candy Company as a corporation, the said Emil E. Skoug and Anton E. Skoug as partners under the trade name of Skoug Candy Company at Sioux Falls, South Dakota had been engaged in the manufacture and sale at wholesale and retail of ice cream and frozen dessert products and confectionery; that the said Emil El. Skoug and Anton E. Skoug had been prominently and favorably known in the wholesale ice cream and confectionery business in Sioux Falls and adjacent trade territory for a period of approximately twenty-eight years prior to May, 1935.

"Fifth: That the Bridgeman-Russell Company is and was during the time hereinafter mentioned a corporation of the State of Minnesota, having its principal place of business at Duluth, but qualified to and having for a number of years prior to May,

1935, a branch and substantial place of business at Sioux Falls, South Dakota, where it was engaged in the manufacture and sale in said city and throughout its trade territory at wholesale of ice cream and frozen dessert products and was engaged in the general dairy and creamery business, selling at wholesale and retail in said Sioux Falls milk and a general or complete line of dairy products.

"Sixth: That in April, 1935, or prior thereto, negotiations were begun between the said Bridgeman-Russell Company and the said Skoug Candy Company and the officers and stockholders of the latter company, working toward a consolidation of said two businesses under and by virtue of a single corporate body and management, which new corporation was to be owned upon a basis of interest in the prior organizations, and the said Emil E. Skoug and the said Anton E. Skoug would receive stock of the new company in the face amount of approximately Sixteen Thousand Dollars ($16,000.00) each, and the total of the stock of the said two brothers would be a minority of the stock of the new company and would of itself assure them no continuation of control or continuation of employment or income from the business they had built up during the preceding twenty-eight years, and before they would consider relinquishing or relinquish control and management of the Skoug Candy Company and abandon the income from the business they had during a life time of effort so built and created they insisted upon an agreement by which the new company would pay each of them a fixed income for a definite period of years; that in the course of such negotiations the attorneys for the Bridgeman-Russell Company, which would under the plans of such negotiations and does hold a controlling proportion of the stock of the new company, prepared and submitted a proposed contract for such merger which contained the following paragraph with reference to Emil E. Skoug, to-wit:

"'Third Party, E. E. Skoug, shall be employed by said...... Corporation for the term of five (5) years following the performance of this agreement at a salary of Two Hundred Dollars ($200.00) per month payable at the end of each month upon condition that said Third Party devote his whole time to the business of said........Corporation and render loyal and diligent service to said Corporation reasonably within the limits of his ability, pro-

vided that if he becomes disabled for any considerable period he shall draw no pay for the period of his disability.'

"That such proposed provision was not satisfactory because of the last clause above quoted, and said proposal was rejected by Emil E. Skoug, and since it did not express the intent and purpose in prior and subsequent negotiations and contracts that the said Emil E. Skoug was to be paid during such period a monthly amount for services to be rendered reasonably within the limits of his ability and during disability if he was not able to perform any services.

"Seventh: That arrangements were made by the said two companies and their stockholders, including Emil E. Skoug, for the formation of the new company to be known as the Dairyland Creamery Company, defendant herein, to take over the assets and business of each of the two previously mentioned concerns in Sioux Falls and surrounding trade territory, and in consideration of the execution of contracts for the transfer of the asests of the Skoug Candy Company to the Dairyland Creamery Company and to accomplish the purpose of providing an income for the said Emil E. Skoug for a period of five years after the Dairyland Creamery Company commenced its active business, irrespective of what if any services the said Emil E. Skoug was able to render during said term, the said Dairyland Creamery Company agreed to pay the said Emil E. Skoug Two Hundred Dollars ($200.00) per month the first year and One Hundred Fifty Dollars ($150.00) per month the next four years, and a contract to that effect and intended to carry that purpose into effect was made and entered into ,a copy of which contract marked Exhibit 'A' is hereto attached and hereby referred to.

"Eighth: That the provisions of said contract, Exhibit 'A,' when applied to the subject matter of this litigation are uncertain, but the intent of the parties at the time of execution of Exhibit 'A' was, and the second paragraph thereof should be construed as though it were written as follows:

"For and in consideration of the sum of One Dollar and other valuable considerations, and as part of the consideration for the execution of contracts for the transfer of the assets of the Skoug Candy Company to party of the first part, party of the first part does hereby employ the party of the second part, for a term of

·five years, commencing at the date when party of the first part shall commence its active business, and does hereby agree to pay the party of the second part for his services to first party, the sum of Two Hundred Dollars ($200.00) per month, payable at the end of each month for a period of one year, and the further sum of One Hundred and Fifty Dollars ($150.00) per month, payable at the end of each month, for the next four years, provided that second party shall give and devote his full and entire time and undivided attention to the business of the first party, rendering loyal, diligent and satisfactory services to the first party, in such work and business as may be assigned to him to do, reasonably within the limits of his abilities, provided that if he becomes disabled for any considerable period he shall draw such pay for the period of his disability.

"Ninth: That under said contract Emil E. Skoug began to work for the said Dairyland Creamery Company at the date when said new company commenced its active business on or about June 1, 1935, and continued in the active discharge of his duties thereunder until June 24, 1937; that he was, pursuant to said contract, paid the sum of Two Hundred Dollars ($200.00) per month from on or about June 1, 1935 to June 1, 1936, and the sum of One Hundred Fifty Dollars ($150.00) per month beginning the month of June, 1936, and thereafter for the period and to the extent only as is hereinafter alleged.

"Tenth: That on or about June 24, 1937, Emil E. Skoug while engaged in the active discharge of his duties for and on behalf of the defendant company suffered a severe 'stroke' which affected his organs of speech, his limbs and his mind to such an extent that he has been unable to do work of any kind from that date on, and such condition exists at the present time.

"Eleventh: That the facts of such stroke and disability were well known to the defendant company and its officers and agents as they occurred, and the said defendant company did continue to pay the said Emil E. Skoug at the rate of One Hundred Fifty Dollars ($150.00) per month for each of the months throughout the full year of 1937, and during each of the months from January through May, 1938, both inclusive, the defendant company paid to the said Emil E. Skoug the sum of Seventy-five Dollars ($75.00) upon said account and the amount owing under said contract, but

no more, and there remains due and owing from the defendant to the plaintiff the sum of Eleven Hundred Twenty-five Dollars ($1,125.00) by reason of the aforesaid for the period prior to November 1, 1938, no part of which has been paid."

Exhibit "A" attached to the contract reads as follows: .

"Exhibit 'A'

"Agreement with E. E. Skoug

"This agreement made and entered into by and between the Dairyland Creamery Company, a Corporation, of Sioux Falls, South Dakota, party of the first part, and E. E. Skoug of Sioux Falls, South Dakota, party of the second part, Witnesseth:

"For and in consideration of the sum of One Dollar and other valuable considerations, and as part of the consideration for the execution of contracts for the transfer of the assets of the Skoug Candy Company to party of the first part, party of the first part does hereby employ the party of the second part, for a term of five years, commencing at the date when party of the first part shall commence its active business, and does hereby agree to pay the party of the second part for his services to first party, the sum of Two Hundred Dollars ($200.00) per month, payable at the end of each month for a period of one year, and the further sum of One Hundred and Fifty Dollars ($150.00) per month, payable at the end of each month, for the next four years, provided that second party shall give and devote his full and entire time and undivided attention to the business of the first party, rendering loyal, diligent and satisfactory services to the first party, in such work and business as may be assigned to him to do, reasonably within the limits of his abilities; it is

"Further agreed that if during the 2nd to 5th years, inclusive, party of the first part should make a profit there shall be paid to the party of the second part a bonus amounting to Three Hundred Dollars ($300.00), per year, but which bonus in no event to exceed the amount of the net profits for the year of such payment, and which said bonuses shall not be cumulative; it is

"Further agreed that in the event the party of the first part should make a profit the party of the second part may at his option surrender to the party of the first part, stock to the par value of Three Hundred Dollars ($300.00) and receive cash out of the net profits of the said company, at par, for said stock; it being under-

stood, however, that stock retirement under the terms hereof, shall be made only out of net earnings of the company, after all bonuses shall have been paid.

"Dated at Sioux Falls, South Dakota, this 13th day of May, 1935."

Can the contract of the parties be interpreted in the sense alleged by the eighth paragraph of plaintiff's complaint is the sole question presented by this appeal. We are convinced that a negative answer is dictated by both reason and authority.

■ Plaintiff admits that according to the overwhelming weight of authority a contract for the performance of personal service is terminated where, by reason of sickness or other permanent disability of the servant, he is unable to perform his contract, unless the parties have contracted to the contrary. Cf. 39 C. J. 78, § 74. Plaintiff asserts, however, that the contract of these parties obligates the master to pay notwithstanding the servant's permanent disability. In support of this conclusion, plaintiff assumes that the contract is ambiguous, and that therefore resort may be had to parol evidence of the surrounding circumstances and prior negotiations, and contends that when all of these materials are considered it is possible to interpret the contract as alleged in the eighth paragraph of the complaint.

If the ambiguity be conceded and it be assumed that all of the materials described in the complaint are legally available as aids to interpretation, nevertheless, in our opinion, it is impossible to read the meaning for which plaintiff contends into the contract of these parties.

■ The power to interpret is operative solely within the field of possible meanings of the form of words the parties have adopted as the expression of their agreement. Warrant for adding unexpressed intentions may not be found in the power to interpret a contract. § 610, Williston on Contracts, Rev. Ed. Viewing the contract at bar as a whole in the light of all the matters alleged in the complaint, we are of the opinion that it is impotent to convey the meaning for which plaintiff contends.

■■ A contract to pay for services, even though that contract requires nothing more of the servant than that he perform services "within the limits of his ability," must be rewritten to convey the meaning that the master is obligated to continue to pay

after disability has rendered it impossible for the servant to continue in his service.

It is said by plaintiff that the allegations of paragraph 11 of the complaint show that the parties have interpreted the agreement in accordance with the contentions of plaintiff. The subsequent acts of the parties will not add an unexpressed meaning or a new term to an executory contract. "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." § 908, 1919 Rev. Code. Cf. SDC 10.0806 and § 623, Williston on Contracts, supra.

The order of the trial court is reversed.

All the Judges concur.