NORMAN P. STRADER, Respondent, *v.* JOSEPH M. COLLINS, Appellant.

First Department, October 28, 1952.

*Jack Hart* of counsel (*Myron Engelman* with him on the brief; *Engelman and Hart,* attorneys), for appellant.

*Irving J. W. Marx* of counsel (*Leslie Handler* with him on the brief; *Friedman, Marx & Handler,* attorneys), for respondent.

CALLAHAN, J. Plaintiff was hired by defendant as head coach of the New York Yankees, a professional football team, for the calendar year 1951 at an annual salary of $20,000 payable in equal monthly installments. Plaintiff brought this action for wrongful discharge by the defendant, who was owner of the team, and has been awarded damages of $10,000 for breach of contract of employment. The alleged discharge occurred on August 1, 1951.

The defendant admitted the termination of the employment on or about that date, but claimed that it was justifiable by reason of the plaintiff's physical incapacity to perform his contract on account of protracted illness growing out of an alleged coronary thrombosis, and that there had been no sufficient recovery to permit plaintiff to perform his duties under the contract. The plaintiff's employment was to some extent seasonal in that the actual playing season was in the last quarter of the year, which was preceded by a training camp period of about one month. During the remainder of the year plaintiff had some duties to perform, but they involved no strenuous physical efforts on his part.

It is not disputed that on May 31, 1951, the plaintiff became ill and was removed by ambulance to a hospital, where he remained during the month of June. The doctor attending the plaintiff in the hospital diagnosed his condition as involving a coronary thrombosis. This fact had been communicated to the defendant. Plaintiff gave defendant the name of his physician, a Dr. Fischl, and defendant with plaintiff's knowledge and consent discussed his condition with Dr. Fischl. Apparently, shortly after the discharge of plaintiff from the hospital, another physician, a Dr. Palatucci, after physical examination of plaintiff, advised him that in his opinion plaintiff never had a coronary thrombosis. Accordingly, plaintiff, some time in the month of July, offered to return to work. Defendant expressed concern about the plaintiff's health. Though he desired plaintiff to continue as head coach if his condition of health permitted, the defendant told plaintiff that he was fearful that plaintiff might " drop dead " during the training season or upon the playing field. Plaintiff assured the defendant that he was in good shape. The defendant, however, required plaintiff to sign a paper releasing defendant from any responsibility or deliver a physician's statement that plaintiff was in sound physical condition. Plaintiff refused to sign the release or submit any medical certificate.

Whether the month's illness and confinement in the hospital had extinguished the contract as a matter of law is not presented. (See, however, *Spalding* v. *Rosa,* 71 N. Y. 40; *Fahey* v. *Kennedy,* 230 App. Div. 156, and *Johnson* v. *Walker,* 155 Mass. 253.) The defendant conceded that he had not chosen to treat plaintiff's enforced absence for illness as dissolving the contract of employment. It is thus apparent that the major issue in the case is the physical ability of the plaintiff to continue his work as head coach during the remainder of the year.

In connection with the question of his physical condition plaintiff did not call any medical witnesses. However, the defendant called three doctors, who had attended the plaintiff in June and July. With respect to the first physician, a Dr. Kossman, who examined plaintiff on July 24, 1951, plaintiff's claim of privilege was sustained by the trial court. When the second physician, Dr. Palatucci, who examined the plaintiff on July 20, 1951, after his discharge from the hospital, was called by the defendant, plaintiff did not object to the receipt of his testimony. The trial court, while Dr. Palatucci was on the stand, advised plaintiff that he was waiving his privilege as to Dr. Palatucci's testimony. Nevertheless, plaintiff did not object

to the introduction of that evidence. Dr. Palatucci testified that he had familiarized himself with the hospital records, of plaintiff's case, including the diagnosis of coronary thrombosis by Dr. Fischl. The defendant then called Dr. Fischl, who had attended plaintiff in the hospital. Plaintiff then claimed privilege against the receipt of Dr. Fischl's testimony, and the court sustained the objection on the ground that the receipt of Dr. Palatucci's testimony did not amount to a waiver as to the testimony of Dr. Fischl or the hospital records.

We find error in this ruling. The law is well established in this State that the patient waives the privilege as to his physician's testimony by failing to object to such testimony when the physician is called by the other party, and, further, that the privilege once waived " is waived for all time." The waiver is not confined to the particular physician who testifies, but extends to any other doctor who has examined the plaintiff concerning the particular ailment involved. (See *Steinberg* v. *New York Life Ins. Co.,* 263 N. Y. 45; *Capron* v. *Douglas,* 193 N. Y. 11, and *People* v. *Bloom,* 193 N. Y. 1.) " Any voluntary disclosure at the trial of the existence of a disease, whether made through examination of a physician or other witness, or made in the form of an admission or stipulation, destroys the statutory seal of secrecy." (*Apter* v. *Home Life Ins. Co.,* 266 N. Y. 333, 337.)

Though Dr. Palatucci testified that he found an absence of the specified disease, his testimony disclosed that another physician had found it present. We think that this was a disclosure which could not be recalled. This error, which left the jury with only one side of the medical proof on the basic question in the case, requires reversal of the judgment.

There is a second assignment of error, which we might well sustain. This is based on the exclusion of part of defendant's testimony as to his conversation with plaintiff at the time of plaintiff's alleged offer to return to work. Despite the fact that plaintiff had purported to give the full conversation, the trial court ruled that defendant's version would be excluded as privileged, insofar as it related to the diagnosis of plaintiff's condition by Dr. Fischl. We find this ruling incorrect. Any vestige of support for it would, of course, be removed by our finding that any privilege on this subject had been waived.

As a new trial is to be ordered, we think it necessary to refer to a question raised on the present appeal with respect to the burden of proof on the issue of the validity of the defendant's act in declaring the contract at an end. The parties refer to

this issue as the " justification for the discharge ". The law, of course, is settled that an employer is required to plead the facts supporting his claim that he has terminated a contract of employment because of misconduct of the employee (*Linton v. Unexcelled Fireworks Co.*, 124 N. Y. 533). It has been quite commonly considered that the burden of proof would follow the requirement as to pleading in this respect. Where, however, the contract of employment involves a condition express or implied and the question is whether the condition has been performed, it has been held that on the whole case the burden of establishing performance rests with plaintiff (*Delano v. Columbia Machine Works & M. Iron Co.*, 179 App. Div. 153, affd. 226 N. Y. 660; *Burns v. Lipson*, 204 App. Div. 643).

In every contract of employment there is an implied condition that the employee will be physically capable of performing his duties at the time appointed (*Spalding v. Rosa*, 71 N. Y. 40, *supra; Fahey v. Kennedy*, 230 App. Div. 156, *supra; McGarrigle v. McCosker*, 83 App. Div. 184; Wood on Master and Servant [2d ed.], p. 224; 1 Labatt on Master and Servant [2d ed.], § 220 *et seq.*). The degree of health or vigor involved in the condition will, of course, depend on the nature of the work covered by the contract. The duration and nature of an illness, the character of the employment and the necessity of the master are all factors affecting the question as to whether there has been so material a breach as to justify an election to terminate (6 Williston on Contracts [Rev. ed.], § 1942). In this case, however, the defendant chose to continue the contract in force and binding on both parties even after the absence of the plaintiff for a month, if plaintiff was physically capable of performing the duties of the position.

We think that under these circumstances the ultimate issue in the case was the actual physical condition of the plaintiff and his ability in the future to do the work required of him by the contract of employment. As this issue involves proof of a condition precedent implied in the contract, the burden of establishing fulfillment rests with the plaintiff.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

DORE, J. P., COHN, VAN VOORHIS and BREITEL, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event. Settle order on notice.