**In the Matter of the GUARDIANSHIP OF Herman Francis VIERECK, an Incompetent Person.**

No. 15449.

Supreme Court of South Dakota.

Argued April 22, 1987.

Decided July 22, 1987.

James D. Taylor of Tinan, Smith & Taylor, Mitchell, for appellant Valerie Mitchell.

John B. Wehde, and Douglas G. Fosheim of Wehde, Fosheim & Haberstick, Huron, for appellee Everett Bates.

Randolph F. Stiles, Mitchell, for the Estate.

SABERS, Justice.

Valerie Mitchell (Mitchell) appeals the order approving the final account of Everett Bates (Bates), the guardian of Herman Francis Viereck (Viereck).   We affirm.

*Facts*

On July 19, 1982, Alyce Bates petitioned the court for appointment of a guardian over the person and estate of her father, Viereck.   Alyce's husband, Bates, was appointed on August 3, 1982.   Bates furnished a $200,000 Western Surety bond.

Bates filed an initial accounting and inventory (of cash and securities) with the court on December 1, 1982.   (An additional inventory of personal property, other than cash and securities, was included in Bates' final account filed March 19, 1986.)   At the

time of the initial guardianship accounting, Viereck's children included four daughters: Alyce Bates, Valerie Youngs, Ethel Ferguson, and Virginia Peters; and one son: Virgil Viereck. Ethel Ferguson predeceased Viereck. Mitchell is Ethel Ferguson's daughter.

Viereck died on May 17, 1983. After his death, Bates filed his first final account as guardian on September 8, 1983. This was later supplemented to account for certain cash gifts, annuities, and personal property pursuant to court order. On December 5, 1984, the executor of Viereck's estate, Norwest Capital Management and Trust Company (executor) filed objections and moved the court for a determination upon the first final account.

Following a hearing on December 20, 1984, the court entered findings and conclusions on February 4, 1985. The court found that Bates wrongfully distributed cash and annuities to Viereck's four daughters [1] and ordered him to return the cash and annuities to Viereck's estate with 8½% interest.

On November 7, 1985, a hearing was held on the executor and Mitchell's order to show cause why Bates should not be held in contempt for failing to abide by the court's previous order of February 4, 1985. In its Memorandum Decision dated December 13, 1985, the court ruled that: Bates failed to cause the return of the $6,250 (plus interest) cash distribution improperly given to Ethel Ferguson; Bates properly paid interest on the annuities as ordered; the claim for double damages and punitive damages against Bates was denied; and Bates was required to file a final account within thirty days.

Bates filed a Final Account of Guardian on March 19, 1986. On April 7, 1986, a hearing was held on the objections of the executor and Mitchell to this final account. On June 3, 1986, the court entered an order approving the final guardianship account, discharging Bates as guardian, and relieving his bondsman from any further liability. Finally, the court ordered Viereck's estate to pay any outstanding bond premiums owed by the guardianship for Bates' surety bond. The executor did not appeal the court's order approving Bates' final account but Mitchell did.

### Mitchell's Claims

Mitchell claims that: (1) punitive and double damages should have been assessed against Bates for wrongfully distributing the cash and annuities to the Viereck daughters, (2) Bates failed to return certain items of personal property to the estate, (3) the final account was improper, (4) Bates and his bondsman should not have been discharged, and (5) the estate should not be obligated to pay the outstanding surety bond premiums.

### 1. PUNITIVE AND DOUBLE DAMAGES

■ Mitchell contends that double damages should have been assessed against

---

1. The distribution was as follows:

| DATE | TRANSACTION | RECIPIENT | AMOUNT |
|---|---|---|---|
| 8/31/82 | Insurance annuities No. 290520, 294107 & 249804 Cash proceeds | Valerie V. Youngs | $16,533.48 |
| 12/30/82 | Cash distribution | Alyce V. Bates | 6,250.00 |
| 12/30/82 | Cash distribution | Ethel M. Ferguson | 6,250.00 |
| 12/30/82 | Cash distribution | Virginia J. Peters | 6,250.00 |
| 12/30/82 | Cash distribution | Valerie V. Youngs | 6,250.00 |
| 3/1/83 | Insurance annuities No. 612654, 290603 & 294509 Cash proceeds | Retained in guardianship | 22,038.09 |
| 3/1/83 | Insurance annuities No. 618656, 290519 & 294108 distributed to alternate owner | Alyce V. Bates | 22,096.57 |
| 3/1/83 | Insurance annuities No. 618653, 290518 & 294106 distributed to alternate owner | Virginia Peters | 22,096.57 |
| 3/1/83 | Insurance annuity No. 618655 distributed to alternate owner | Valerie V. Youngs | 7,359.36 |

Bates under SDCL 30–17–3 [2] which applies to guardianships through SDCL 30–26–3.[3] She further claims that punitive damages were warranted under SDCL 30–17–8.[4] Mitchell bases these claims upon Bates' alleged conversion of Viereck's cash and annuities without his consent. In its memorandum decision dated December 13, 1985, the trial court discussed the executor's claim for double damages as follows:

> These damages are contingent upon a finding that guardianship assets were stolen or alienated by Mr. Bates. There is no indication that Mr. Bates intended to deprive his ward of guardianship funds. Rather, he jumped the gun in distributing such funds to those he believed to be heirs of the ward. While his actions were improper, they do not rise to the level of intentional stealing. No double damage award shall be granted. Likewise, no punitive damage award is justified by the evidence.

Bates argued before the trial court that SDCL 30–17–3 did not apply to guardianship matters. On appeal, Bates conceded Mitchell's argument that SDCL 30–17–3 applies to both probate and guardianship proceedings. This concession does not entirely resolve the matter, however, because SDCL 30–17–3 on its face, limits liability and double recovery "to an action by the executor or administrator of the estate ... for the benefit of the estate." This language excludes Mitchell and as indicated above, the executor has abandoned its claim by not appealing. Mitchell's claim for punitive damages under SDCL 30–17–8 stands on different footing. The statutes,[5] when taken together, do not restrict a claim for punitive damages to the executor or administrator of the estate for the benefit of the estate as do those relating to double recovery. Therefore, we consider her claim.

■ Mitchell relies upon *Matter of Estate of Hansen*, 366 N.W.2d 852 (S.D.1985) to support her claim for punitive damages. In *Hansen*, this court affirmed the trial court's conclusion that the executor of decedent's estate mishandled the estate's assets and wrote:

> In the referee's memorandum opinion, adopted by the trial court, he states that the discrepancies were so great he was compelled to the conclusion that they could not possibly have been the result of any honest mistake and that the discrepancies among the various accountings

---

**2.** SDCL 30–17–3 provides:

*Double liability to estate for theft or alienation before grant of letters.* If any person, before the granting of letters testamentary or of administration, steals or alienates any of the moneys, goods, chattels, or effects of a decedent, he is chargeable therewith, and liable to an action by the executor or administrator of the estate for double the value of the property so stolen or alienated, to be recovered for the benefit of the estate.

**3.** SDCL 30–26–3 provides:

*Decedents' estate provisions applicable to guardianships.* The provisions of this title relative to the estates of decedents, so far as they relate to the practice in the circuit court, apply to proceedings under chapters 30–26 to 30–31, inclusive.

**4.** SDCL 30–17–8 provides:

*Punitive damages included in judgment for recovery of decedent's property.* In any action now or hereafter pending to recover property of the decedent or his estate as provided in §§ 30–17–2 to 30–17–7, inclusive, the judgment may include, in addition to the value of such property, a sum not to exceed the value thereof, as punitive damages, in the discretion of the court or jury.

**5.** SDCL 30–17–4 provides in part:

If any executor, administrator, *or other person* interested in the estate of a decedent, complains to the circuit court, ... that any person is suspected to have concealed, stolen, smuggled, conveyed away, or disposed of any moneys, goods, or chattels of the decedent, ... the judge may cite such person to appear before the circuit court, ... [emphasis added]

SDCL 30–17–5 provides in part:

"If the person so cited refuses to appear and submit to an examination, or to answer such interrogatories as may be put to him touching the matters of the complaint, the court may, ... commit him to the county jail, ..."

SDCL 30–17–6 provides in part:

"The said interrogatories and answers may be received and read in evidence in any action brought by such executor, administrator, *or other person*, for the recovery of such money, goods, or chattels...." [emphasis added]

were the product of an intentional intent to secrete assets of the estate.

*Id.* at 854.

As in *Hansen*, Mitchell argues that Bates' improper distribution of Viereck's cash and annuities to the four daughters, one of which was Bates' wife, and the discrepancies in the accountings show that the assets were alienated. Although Mitchell argues that Bates intended to convert the guardianship funds, the evidence shows otherwise and the trial court so found:

—Bates knew the contents of Viereck's will which provided for the distribution of the (Anchor National Life) annuities to his four daughters.

—In an effort to reduce Viereck's estate tax, Bates distributed the annuities to the three surviving daughters without Viereck's consent and before his death. *See infra* note 6.

—Although Bates claimed he consulted his attorney about making the cash distributions, he remained concerned. Therefore, he (or his wife) spoke with each of the Viereck daughters before the distributions were made and obtained their agreement (or understanding) that if the court should later deem the distributions improper, they would return the money.

—After the court ordered Bates to restore the cash and annuities to the estate he did so except for the $6,250 distributed to Ethel Ferguson, which Mitchell received but refused to refund.

—By the time of the final accounting, the distribution to Ethel Ferguson was returned to the estate from Bates' personal funds.

As indicated, when the court ordered Bates to return the money, he promptly caused compliance through the daughters, except for Ethel Ferguson who predeceased Viereck. Ethel Ferguson received $6,250 on December 30, 1982, approximately sixteen days before her death. This became a part of her estate and Mitchell was her sole heir. Despite Bates' prior agreement with Ferguson, neither Mitchell nor Ferguson's husband would return the money. They claimed they were unaware of any agreement between Bates and Ethel Ferguson. Therefore, Bates restored the $6,250 plus interest to the Viereck estate out of his own pocket.

The evidence suggests that Bates made the distributions in good faith in accordance with what he believed to be Viereck's testamentary intentions. He stated that he thought as guardian he could make cash distributions to Viereck's heirs up to $10,000. Although the transfer was improper, the Viereck daughters agreed to it and there was no finding to the contrary. Bates realized no personal gain from the transaction. Even though Bates "jumped the gun" by distributing the cash and annuities to Viereck's heirs before his death and without his consent, it does not show that Bates intended to steal or alienate his ward's assets. As distinguished from *Hansen, supra*, the evidence does not support Mitchell's claim that Bates intentionally converted the assets. Rather, it shows that he made mistakes which he later corrected, without substantial harm to anyone but himself. The evidence does not support Mitchell's claim for punitive damages and the court's denial was within its discretion under SDCL 30–17–8.

## 2. THE IMPROPERLY TRANSFERRED PERSONAL PROPERTY WAS SUFFICIENTLY RETURNED TO THE ESTATE

At the time the final account was filed, the cash distributions of $6,250 to each of the Viereck daughters were restored to the guardianship funds. The annuities, or their equivalent, which were distributed to all of the daughters except Ethel Ferguson (who was deceased at the time of the distribution),[6] were also returned to the guardianship.

---

**6.** Bates testified that he did not distribute Ethel Ferguson's annuities to her heirs because the annuity contract provided that if the annuitant predeceased Viereck, the annuity would revert back to his estate.

Mitchell also claims that Bates illegally transferred some items of Viereck's personal property which have not been returned to the estate. These include several diamond rings, a Black Hills gold ring, china, a silver tea service, coins, and an old broken safe. The silver service and china are listed with the inventory of Viereck's personal items in the final account. According to Bates, all of the jewelry and coins are in the possession of the Viereck daughters in Huron. Bates stated that he has the safe in the basement of his house, also in Huron. Bates claimed that the reason he transferred these valuable items from Viereck's empty house was to protect them from possible theft. There is no evidence that Bates intended to steal these items from his ward.

■ The final guardianship account omitted the jewelry, coins, and safe from the inventory of personal items. These items remain in the possession of Bates and Viereck's daughters in Huron, South Dakota. The record shows that Bates advised the executor as to the location of these items. Bates has accounted for them. Although this is an improper method of returning the property to the executor, the court found no error and the executor failed to appeal. Therefore, Mitchell's request to reverse the final account and remand for further proceedings fails since the personal property has been accounted for and the executor may distribute it in accordance with the terms of Viereck's will.

### 3. THE GUARDIAN'S FINAL ACCOUNT WAS PROPER

■ In its findings and conclusions entered June 4, 1986, the court found that Bates' final accounting was in proper form. The final account was approved and ratified by the court. All expenditures and receipts were specifically represented in the accounts, journals, and ledgers which Bates submitted to the court. These items form a part of the record. The executor did not appeal Bates' final account.

We review the trial court's findings of fact under the "clearly erroneous" standard. SDCL 15-6-52(a). We will not overturn the trial court's findings unless, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake was made. *Wiggins v. Shewmake,* 374 N.W.2d 111, 114 (S.D.1985).

The evidence shows that Bates was a retired accountant. When he assumed the responsibility of guardian, Viereck's home and personal effects were in a state of disarray. At the October 15, 1983, hearing on the executor's objections to Bates' first final account, Bates testified that he did not include Viereck's personal items in the first instance because he "didn't get that far." Viereck was a "saver" who stored his voluminous records in unmarked boxes. Bates stated that he assumed other family members would help him sort through Viereck's personal effects and clean up the house and grounds but that the responsibility fell solely on him. An inventory of personal items was included in the final account filed March 19, 1986. The final account also included the return of the cash distributions and the return of the annuities or their equivalent.

The duties of a guardian are set forth in SDCL 30-27-30. The trial court approved Bates' final account. The executor did not appeal. The record supports the conclusion that at the expiration of the guardianship Bates settled his accounts in conformance with SDCL 30-27-30(3). The evidence does not leave a definite and firm conviction that a mistake was made. We therefore affirm the court's approval of the final account.

### 4. THE TRIAL COURT PROPERLY DISCHARGED THE GUARDIAN, THE BOND, AND HELD THAT OUTSTANDING BOND PREMIUMS WERE THE OBLIGATION OF VIERECK'S ESTATE

■ Viereck died on May 17, 1983. The trial court approved the final account on June 3, 1986. Thereafter, the assets of the guardianship estate came under the control of Viereck's executor. The trial court held that any outstanding bond premiums were the obligation of Viereck's estate. Mitchell claims that Bates' shoddy bookkeeping con-

tributed to the delay in filing the final account and that Bates should not be permitted to charge additional premiums to Viereck's estate. Bates argues that even if the trial court's ruling upon this issue was error, the probate court has complete authority to determine the obligations of Viereck's estate.

Bates' conduct as guardian clearly resulted in some, but not all, of the delay. Mitchell's refusal to refund the $6,250 accelerated the conflict and further delayed the proceedings. We are also concerned with the executor's failure to appeal the trial court's judgment, findings, and conclusions. For all of these reasons, we do not have a definite and firm conviction that a mistake was made.

The judgment is affirmed.

MORGAN, J., concurs.

HENDERSON, J., concurs specially.

MILLER, J., and YOUNG, Circuit J., concur in result.

YOUNG, Circuit J., sitting for WUEST, C.J., disqualified.

HENDERSON, Justice (specially concurring).

I specially concur in order to set forth a standard of review upon which I may platform my future votes in this Court. There were five findings of fact and six conclusions of law entered by the trial court. This constitutes the formal "decision" of the court. *Muckler v. Smith*, 51 S.D. 127, 212 N.W. 491 (1927); *First Nat'l Bank v. McCarthy*, 13 S.D. 356, 83 N.W. 423 (1900).

Reference is made to the following authority on scope of review: *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948). *Accord: Schmidt v. Forell*, 306 N.W.2d 876 (S.D.1981); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). *United States Gypsum Co.* enunciated: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been commit-

ted." *Id.*, 333 U.S. at 395, 68 S.Ct. at 542, 92 L.Ed. at 766. Later, the United States Supreme Court elaborated on this definition by expressing that an appellate court, when it employs the clearly erroneous standard "is circumscribed by the deference it must give to decisions of the trier of the fact...." *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129, 148 (1969). Discussing Rule 52(a) of the Rules of Civil Procedure (codified in SDCL 15–6–52(a)), the United States Supreme Court emphasized that the clearly erroneous standard "does not apply to conclusions of law." *See Pullman-Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66, 79 (1982). In that same year, our nation's Highest Court held "if the trial court bases its findings upon a mistaken impression of applicable legal principles, the reviewing court is not bound by the clearly erroneous standard." *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 855 n. 15, 102 S.Ct. 2182, 2189 n. 15, 72 L.Ed.2d 606, 616 n. 15 (1982).

Note that this case is an estate case. Note that this author cites the old *Hobelsberger* case which has been cited in this Court, *ad infinitum*. This author now offers *In re Estate of Gosmire*, a unanimous opinion, 331 N.W.2d 562, 567 (S.D.1983), and I quote from it: "The trial court's findings of fact shall not be set aside unless clearly erroneous. A finding is clearly erroneous when upon reviewing the entire evidence, we are left with a definite and firm conviction that the trial court has erred. *Estate of Nelson*, 330 N.W.2d 151 (S.D.1983); *Matter of Estate of Pierce*, 299 N.W.2d 816 (S.D.1980)."

This special writing is tendered to that language of the majority opinion, on the scope of review, pertaining to findings of fact, which is perhaps, very close to the law of this state and nation. This author suggests that, conceptually, this Court must bifurcate with certainty, its scope of review on findings of fact and conclusions of law. *See Inwood Labs.*, 456 U.S. at 855 n. 15, 102 S.Ct. at 2189 n. 15, 72 L.Ed.2d at 616 n. 15; *Village of Weyauwega v. Kramer*, 180

Wis. 168, 192 N.W. 452 (1923).* In *Bennett v. Jansma,* 329 N.W.2d 134, 136 (S.D. 1983), Justice Morgan, writing for a unanimous Court, stated:

The trial court's dismissal of the action operates as an adjudication upon the merits. SDCL 15–6–41(b). Since the dismissal operates as an adjudication upon the merits, this court on appeal reviews the findings of fact under the "clearly erroneous" standard. 5 Moore's Federal Practice § 41.13[4] at 41–196 to 198. We review the conclusions of law to determine whether they are in error as a matter of law.

In determining a scope of review on a conclusion of law, one may dub it a "mistake of law" or "mistake in impression of legal principles" or a "conclusion[] of law ... in error as a matter of law." It all boils down to the same concept.

MILLER, Justice (concurring in result).

For reasons stated below, I can only concur in the result of the majority opinion.

The primary issue centers around the refusal of the court to award punitive and double damages. This court should not address the issue since it was not properly preserved for appeal or presented to us for the following reasons:

1.

The Order Approving Final Account of June 3, 1986 (the order on appeal) makes no reference whatever to double or punitive damages—it merely approves the Final Account, discharges the guardian, and makes the guardian bond the obligation of the estate.

2.

The findings of fact and conclusions of law upon which the Order Approving Final Account was entered makes no reference to punitive or double damages.

3.

The proposed findings of fact, conclusions of law, and order of appellant make no reference to double or punitive damages, although there is a statement of some underlying facts which could arguably support them.

4.

Although reference is made in the majority opinion and in appellant's brief to the trial court's memorandum decision of December 13, 1985 (the "jump the gun" memo decision), there is no order in the record implementing it, and, of course, no appeal was taken from it.

Lastly, I am offended by Bates' conduct and apparent cavalier attitude toward his responsibility under the oath he undertook as guardian. However, the showing is insufficient to establish that the trial court was clearly erroneous. Apparently, most of the property has now been returned, with the exception of some Black Hills gold rings, coins, and china. The trial court, in my opinion, should have ordered them returned, but failed to do so in its order. Appellant here has no standing to raise that issue, and, unfortunately, the estate has not appealed.

I am authorized to state that Circuit Judge YOUNG joins in this concurrence in result.

---

* *Weyauwega* was quoted with approval in *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292, 296 (S.D.1982), a four-to-one decision authored by Justice Morgan.