Douglas **STRACKBEIN**, Appellant,

v.

**FALL RIVER COUNTY HIGHWAY DEPARTMENT**, Appellee.

No. 15535.

Supreme Court of South Dakota.

Considered on Briefs Sept. 4, 1987.

Decided Dec. 9, 1987.

Rodney C. Lefholz of Fousek, Lefholz & Mairose, Rapid City, for appellant.

Kenneth R. Dewell, Hot Springs, for appellee.

SABERS, Justice.

Douglas Strackbein (Strackbein) filed a grievance with the South Dakota Department of Labor claiming that his employer, the Fall River County Highway Department (County) did not have "just cause" for dismissing him under the County's collective bargaining agreement with Strackbein's union. After the grievance hearing, a Department hearing examiner found there was just cause for dismissing Strackbein and concluded that the County did not violate its agreement. On appeal to the circuit court the hearing examiner's order was affirmed. Strackbein appeals and we affirm.

### FACTS

Strackbein is 34 years old and was hired as a mechanic's helper for the County on July 6, 1976. The record reflects no substantial complaints about Strackbein's job performance. Strackbein's union had a collective bargaining agreement with the County that provided: "[T]he county reserves the traditional rights of management ... [including] ... [t]he right to select and hire, to promote, to lay off or discharge for just cause...." Strackbein was terminated by the County in July 1983.

As a mechanic's helper Strackbein serviced the County's heavy equipment including changing tires and oil, overhauling engines, and welding. He worked on and repaired equipment such as dump trucks, bulldozers, belly dump trucks, road graders, mowers and tractors. Sometimes he would perform repairs from as high as 12 to 15 feet off the ground. His work occasionally required him to do field repairs on equipment or to tow it or drive it into the County shop, sometimes from as far away as 30 to 40 miles. In repairing equipment he drove an average of 200 miles a week, either in a County pickup or in heavy equipment. In addition to making repairs, he also operated the equipment for field tests.

When there were no repairs, Strackbein occasionally worked as a highway laborer. This work included driving trucks, installing culverts, operating equipment such as a mix plant, and operating snow removal equipment in emergencies.

Strackbein first saw a doctor about his severe headaches in November 1982. His work records show that he twice reported

having headaches or migraines at work, once in February 1982 and again in July 1983. In early 1983 Strackbein reported to his supervisor at work: "You know, I get to doing different things [and] all at once I come to and I don't know what I have done." As a result, the County requested Strackbein to obtain information about his medical condition. Dr. Hefferen, a neurologist, diagnosed Strackbein as suffering from migraine headaches and vertigo (dizziness, often accompanied by nausea). His report stated: "[I]f he [Strackbein] is having vertigo, it is recommended that he not work. Since this vertiginous problem is only an intermittent one, perhaps the patient could be given some time off during those periods in order to recuperate from the vertigo that he might develop." Based on Strackbein's own complaint about his medical condition and the report from Dr. Hefferen, the County terminated Strackbein.

Some evidence indicated that Strackbein's condition should not interfere with his work. An affidavit by Dr. Hefferen indicated that Strackbein's migraines were mild to moderate and could be controlled with medication without interfering with his work. A second doctor who examined Strackbein also concluded that his mild and short-lived vertigo episodes would allow Strackbein to determine when they would occur and allow him to stop his work and wait until they disappeared. Although Strackbein was to take prescribed medication on an "as needed" basis to reduce the severity of any spell, the medical opinions did not overcome the probability that his condition could affect his job performance.

## ISSUE

Was the trial court clearly erroneous in affirming the hearing examiner's finding that Strackbein's medical condition could potentially affect his job performance.

## DECISION

■ In appeals from administrative agencies, this court reviews the record to determine whether the agency's findings of fact are clearly erroneous. Conclusions of law are fully reviewable and will be overturned if there is an error of law. SDCL 1-26-36. *Permann v. Dept. of Labor,* 411 N.W.2d 113 (S.D.1987); *Barkdull v. Homestake Mining,* 411 N.W.2d 408 (S.D.1987).

■ Whether an illness constitutes sufficient cause for an employer to terminate an employment contract depends on the facts in the particular case. *Fahey v. Kennedy,* 230 A.D. 156, 243 N.Y.S. 396 (1930); Annotation, *Right of Employer to Terminate Contract Because of Employee's Illness or Physical Incapacity,* 21 A.L.R.2d 1247 (1952). Depending upon the various facts, the courts have found that medical conditions may or may not affect work performance and serve as the grounds for termination of employment. *Cameron v. J.C. Lawrence Leather Co.,* 47 Tenn.App. 671, 342 S.W.2d 65 (1960) (laborer who performed heavy lifting and had congenital back anomaly was predisposed to injuries and could be terminated for "just cause"); *State ex rel. Baranowski v. Koszewski,* 251 Wisc. 383, 29 N.W.2d 764 (1947) (employee who served as matron in sheriff's office, weighed 285 pounds, had poor vision and high blood pressure, was not physically unfit to perform her work duties). Determinations concerning the physical conditions that affect job performances are as diverse as the ailments and work activities themselves, and are made on a case by case basis depending on a variety of factors. *See, Annot., supra.*

■ In this case Strackbein was terminated because his condition could potentially affect his job performance by putting himself, other employees, and the general public at risk of injury or death. A medical condition that predisposes an employee to injury may serve as "just cause" for discharging an employee. *Cameron, supra.* Although Strackbein's condition has not yet resulted in any work accidents, the evidence fairly supports the inference that the potential for damage, injury or accidental death existed. Any damage or injury could be that much more serious given the type of vehicles and equipment Strackbein repaired and operated on public roads. Al-

though some evidence indicated that Strackbein's condition was manageable to a certain extent, the doctors' opinions about how Strackbein "could" control his condition or how it "should not" jeopardize his job did not completely overcome the County's legitimate safety concerns. Thus, the hearing examiner was not clearly erroneous in finding that Strackbein's condition could potentially affect his job performance because it posed the threat of injury or death. This finding, in turn, supported the conclusion that the County did not violate the collective bargaining agreement in discharging Strackbein for "just cause."

Despite the apparent harsh result in this case, we are bound to apply the appropriate standards of review. Other common principles of charity and human understanding might have guided the County in reaching a less harsh solution to the problem presented by Strackbein's condition. Nevertheless, we must exercise restraint and operate within our limited power as an appellate court reviewing administrative proceedings. SDCL 1–26–37. Whatever result *might* have been reached under more humanitarian principles, we cannot say that the examiner's findings were clearly erroneous or that his conclusions were affected by any error of law.[*]

The judgment is affirmed.

WUEST, C.J., and MORGAN, J., concur.

MILLER, J., concurs in result.

HENDERSON, J., dissents.

MILLER, Justice (concurring in result).

I concur in the result of this opinion. I would vote a straight concurrence, except that I cannot agree to the language and tenor of the last paragraph. In my view, it is improper in a judicial writing to moralize, sermonize, or speculate what we "might" have done "under more humanitarian prin-

ciples." I suggest that we leave the argument to the lawyers and the preaching to the clergy.

HENDERSON, Justice (dissenting).

Appellant Strackbein's issue, by pleading, is raised in these words:

The Deputy Director of the Division of Labor and Management for the State of South Dakota errored [sic] as a matter of law in dismissing Appellant's grievance for the reason that the evidence does not support the finding that Appellant's physical condition would interfere with his job as a mechanic for Appellee.

This issue was propounded to the circuit judge. A record of all proceedings was certified on March 3, 1986, to Circuit Judge Roland Grosshans. Judge Grosshans read the record, took no testimony, and affirmed the Deputy Director's decision by a one-page letter on August 19, 1986, with two key remarks: (1) "The record before me contains substantial evidence to support the decision of the agency, and for that matter, the decision of Appellee"; (2) "The decision of the agency was not clearly erroneous in light of the record before me." As regards (1) above, we have long abandoned the substantive evidence test, and (2) I respectfully disagree with Judge Grosshans' assessment of the record and this Court's affirmance of his decision. Strackbein, an ordinary working man, put his foot in his mouth by making some statements. For these statements, he lost his job. As far as the medical testimony is concerned and his job performance, he is capable of adequately performing his assigned duties and no party disputes that he has, indeed, performed his duties and performed them well. Judge Grosshans entered a Memorandum Opinion on August 19, 1986, and an Order on August 22, 1986, affirming the decision of the Deputy Director and dismissing Strackbein's appeal.

---

[*] I accept and agree with the comment in the concurring opinion about leaving the "preaching" to the preachers, but I consider it appropriate to note when the spirit of justice, though not the letter of the law, is thwarted. When we consider the time, effort and money spent to

assist and employ the handicapped and others with physical limitations, the County's decision to terminate Strackbein, rather than consider reassigning him, is counter productive, even if within the County's legal rights.

The State's Attorney of Fall River County advised the Superintendent of the Fall River County Highway Department to discharge Strackbein. Superintendent Nelson did so. Fall River County relies on Dr. Hefferen's testimony; his affidavit, Grievant's Exhibit No. 6, of August 15, 1983, has been overlooked by all officials, including this Court. It states:

I. THAT he is a Neurologist who has a practice in Rapid City, South Dakota.

II. THAT one of his patients is Douglas Strackbein who has been diagnosed as having vertigo and migraine.

II. THAT Douglas Strackbein's vertigo and migraine are of the mild to moderate type and have never really put him out of work.

IV. THAT Douglas Strackbein's vertigo and migraine should not be a cause for his dismissal from work since they are not life threatening at all and, in fact, are in the mild to moderate range.

V. THAT when Douglas Strackbein does get a migraine or vertiginous episode, these can be controlled by the medicine that I have prescribed for him without interfer- [sic] with his work.

VI. THAT Douglas Strackbein has not had many headaches and vertiginous spells while he was at work.

VII. THAT it is my opinion that Douglas Strackbein should not have his job jeopardized because of his migraine. There are many patients with migraine and vertigo, including myself, who do a job perfectly well even though they have one or both of these symptoms.

VIII. I would strongly recommend that Douglas Strackbein keep his job because the migraine vertiginous status may well be aggravated by being off from work which is a depressive factor.

There are signed affidavits in the record, by Strackbein's fellow employees, reflecting that Strackbein was a competent mechanic and did not beg off work because of vertigo or migraine headaches. Strackbein—not once—ever jeopardized the safety of his fellow employees or the public acting as a mechanic or mechanic's helper.

Strackbein, after consulting with a neurologist (Hefferen) and being placed on medication, did not have any further episodes of vertigo (as of April 11, 1983) and has not had any migraine headaches since October 31, 1983. See Dr. Kelts' Deposition, Exhibit No. 1. Kelts examined Strackbein after Hefferen.

I invite the reader's interest in SDCL 32-12-5.1, a statute devised to permit people who have "episodes of epilepsy, convulsions, fits, seizures, or blackouts ..." to operate a motor vehicle upon receipt of a verified statement of a doctor that, in essence, establishes medication which adequately controls the condition. Strackbein does not have such serious neurological problems, yet he is discharged from his job for "just cause" even though he takes medication and has his problem under control. Strackbein is entitled to equal protection of the law.

Dr. Kelts performed a follow-up examination in January 1984. Strackbein had not suffered any more dizzy spells. Because of medication, the vertigo was gone. Dr. Kelts testified in his deposition, also, that Strackbein had suffered no more migraine headaches since October 31, 1983. See Kelts' Deposition, page 36, lines 19–21; page 37, line 4. Dr. Kelts performed a bilateral fundal examination of Strackbein's head. This examination determines if a person, who has headaches, has any pressure inside the head. There was no such pressure. See Kelts' Deposition, page 21. A CAT scan was also normal. Kelts' Deposition, page 26. A brain wave test was normal, see Kelts' Deposition, page 26, lines 17–23; page 27. It was Kelts' opinion that Strackbein would be able to perform his duties as a mechanic such as changing the oil in a pickup, roadgrader and caterpillar, changing the air filters and tires in the same equipment, and greasing vehicles. Kelts' Deposition, page 43, lines 22–25; pages 44–49. Kelts' opinion was based on the fact that Strackbein's vertigo condition was not of a permanent nature. Kelts' Deposition, page 51, lines 14–21. Because Strackbein's vertigo was mild and never impaired him intellectually or confused him

in any way, it would be Kelts' opinion that Strackbein would be able to determine when an occurrence of vertigo was coming on and would be able to stop what he was doing and wait until the spell disappeared since they are usually short-lived and mild. Kelts' Deposition, page 59, lines 15–23. Kelts went on to testify that it did not matter how long the spell was, because with the type of spell appellant experienced, he would be able to take the opportunity to stop what he was doing and wait until the spell ceased so that he would not be endangering anyone or himself by continuing to work. Kelts' Deposition, page 60, lines 3–7.

Strackbein was honest with the foreman; he said he had a problem; he did something to correct his problem; his problem was corrected; yet, he loses his job. It is unfair, unjust, a termination not for "just cause," and an error of law below. The findings of fact were clearly erroneous, *Pullman–Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66, 79 (1982), and the conclusions of law were mistakes of law or mistakes of impression of legal principles. *In re Guardianship of Viereck*, 411 N.W.2d 102, 107–08 (S.D.1987) (Henderson, J., specially concurring).

Fall River County did not meet its burden of proof; it rests with the employer. *Grievance of O'Neill*, 347 N.W.2d 887 (S.D. 1984). In *Rollinger v. Dairyland Creamery Co.*, 66 S.D. 592, 287 N.W. 333 (1939), we held, essentially, that an employer could terminate an employee who becomes physically disabled and is no longer able to perform his job. Here, Strackbein can do the job, does do the job, and we uphold his termination. This decision is all based on "potential disability" and "potential inability to perform." I declare unto you that there is not a preponderance of proof in this record to support this wispy theory.

"Just cause," a term contained in the Collective Bargaining Agreement, requires a finding that the cause or reason for the action taken by the employer in dismissing the employee be sufficient at law. "Just cause" is defined at 15A Am.Jur.2d *Civil Service* § 63, at 90 (1976), as:

> Legal cause ... exists if the facts ... disclose that the employee's conduct impairs the efficiency of the public service, but *there must be a real and substantial relation between the employee's conduct and the efficient operation of the public service....* (Emphasis supplied.)

There is no evidence in the record to show "a real and substantial relation" between Strackbein's condition and the performance of his job.

FINIS: Strackbein was terminated in July 1983; he had not experienced any episodes of vertigo since April 1983. Dr. Hefferen's report and Dr. Kelts' follow-up examination corroborates this. Pray tell, why was this working man—an excellent worker—canned? Because he innocently told the truth to his boss which set off a series of legal moves against him! A tip of my hat to Strackbein's lawyers for taking this working man's case to the Supreme Court. And I proudly walk with them and Strackbein today.